[No. G015961. Fourth Dist., Div. Three. June 2, 1995.]

In re VOEURN O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VOEURN O., Defendant and Appellant.

**COUNSEL**

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, Acting P. J.**—In this appeal, Voeurn O. contends there is insufficient evidence to sustain the juvenile court's finding he gave false information to a police officer within the meaning of Penal Code section 148.9, subdivision (a).[1] He also maintains section 148.9 is unconstitutionally vague and he was singled out for prosecution because of his suspected gang status. We find Voeurn's conduct did not violate section 148.9 and reverse.

---

[1] All statutory references are to the Penal Code.

## I

About 10:45 one evening, Police Officer Todd Bullock was dispatched to an apartment complex to investigate a call concerning "suspicious juveniles loitering." Bullock spotted Voeurn lying on the grass in the middle of the complex and began questioning him. Voeurn said he was waiting for a friend but could not provide the friend's address. He also gave Bullock a false name and address and denied being in a gang. Voeurn was released and arrested three weeks later when the police discovered his true identity.

## II

At the start of the jurisdictional hearing, Voeurn moved to suppress the false statements he made to Bullock on the ground they were the product of an unlawful detention. However, the court determined Voeurn was not detained at the time of the statements and therefore denied the motion. Voeurn does not contest this ruling on appeal. Rather, he insists it precludes a finding he violated section 148.9.

Section 148.9 provides in pertinent: "(a) Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer . . . , *upon a lawful detention or arrest of the person*, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." (Italics added.)

On its face, section 148.9 is inapplicable to our facts because Voeurn was neither detained nor arrested when he falsely identified himself to Bullock. Nonetheless, the Attorney General asks us to construe the statute as encompassing Voeurn's situation, based on the legislative intent behind section 148.9.

We agree with the Attorney General that our principal task in construing statutes is to divine the intent of the Legislature. (See *People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) However, in so doing we cannot lightly brush off the very words the Legislature chose to convey its intentions. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." (*Caminetti* v. *United States* (1917) 242 U.S. 470, 485 [61 L.Ed. 442, 452, 37 S.Ct. 192]; see also *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934] [judicial construction of statutory language unneccessary when law is clear and unambiguous].)

Here, the Legislature denoted two specific situations under which section 148.9 was to apply: lawful detentions and lawful arrests. We may therefore infer an intent to exclude other circumstances. (*In re Hubbard* (1964) 62 Cal.2d 119, 126 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on other grounds in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137]; see, e.g., *U.S.* v. *Poschwatta* (9th Cir. 1987) 829 F.2d 1477, 1481-1482 [federal statute regarding the admissibility of confessions made during detention or arrest deemed inapplicable to statements made to authorities over the phone].)

Indeed, by the time section 148.9 was enacted in 1982, the United States Supreme Court had drawn a clear distinction between detentions and arrests on the one hand, and on the other, consensual police encounters of the variety to which Voeurn was exposed. (See *United States* v. *Mendenhall* (1980) 446 U.S. 544, 550-555 [64 L.Ed.2d 497, 506-510, 100 S.Ct. 1870] [only detentions and arrests implicate Fourth Amendment].) We may presume the Legislature was aware of this distinction in enacting section 148.9. (*People* v. *Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]; *People* v. *McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].)

Moreover, reference to related statutes shows the Legislature clearly knows how to draft a law which encompasses the giving of false information during a consensual encounter. For example, sections 148.1, subdivision (b) and 148.5, subdivision (b) respectively prohibit making false bomb and crime reports to an officer "engaged in the performance of his or her duties." (See also § 148 [misdemeanor to resist an officer "in the discharge or attempt to discharge any duty of his or her office or employment"].) By foregoing such broad language in section 148.9, it is logical to conclude the Legislature intended the statute to have a less expansive scope. (See *People* v. *Turner* (1993) 15 Cal.App.4th 1690, 1698 [19 Cal.Rptr.2d 736].)[2]

Because section 148.9 is clear and unambiguous regarding the circumstances under which it applies, we must give appropriate deference to the letter of the law. "A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He [or she] must not read in by way of creation." (Frankfurter, *Some Reflections on the Reading of Statutes* (1947) 47 Colum. L.Rev. 527, 533.)

---

[2]Our observation the Legislature could have drafted section 148.9 in broader terms should not be taken as an endorsement that such a statute would be constitutional. As our holding rests solely upon statutory interpretation, we offer no opinion on the·constitutionality of the statute as it now or may exist.

In any event, we are convinced the legislative history of section 148.9 comports with a literal interpretation of the law. The statute was enacted to halt abuses of the bail deposit plan formerly contained in section 1269d which permitted certain misdemeanants to obtain bail by posting a 10 percent deposit of their bail amount. (Legal Affairs Dept., Enrolled Bill Rep., Assem. Bill No. 2583 (1981-1982 Reg. Sess.) Sept. 23, 1982.) Persons arrested for prostitution, for example, had been giving false identification to the police, posting 10 percent of their bail and then failing to return for their court appearances. (*Ibid.*) To discourage this practice, section 148.9 made identifying oneself falsely to a police officer for the purpose of evading court process or proper identification a misdemeanor. (*Ibid.*)

The evil targeted by section 148.9—bail skipping by arrestees—did not develop in this case insofar as Voeurn was not arrested and taken into custody at the scene. Furthermore, there is nothing in the legislative history of the law suggesting it was intended to apply during consensual encounters. To the contrary, the drafters of section 148.9 consistently referred to the terms "arrest" and "detention" as limiting the circumstances under which the provision was meant to govern. Therefore, we disagree with the Attorney General's assessment the Legislature contemplated including Voeurn's conduct within section 148.9.

The judgment is reversed.

Crosby, J., and Wallin, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 31, 1995.