64 Cal.App.4th 1458 (1998)
THE PEOPLE, Plaintiff and Respondent,
v.
VICTOR JAMES SMITH, Defendant and Appellant.
Docket No. D026997.
Court of Appeals of California, Fourth District, Division One.
June 24, 1998.
*1461 COUNSEL
A. Jane Fulton, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George H. Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner and Douglas P. Danzig, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
BENKE, Acting P.J.
In this case we conclude the failure to seek a judgment of acquittal at the close of the prosecution's case in chief pursuant to Penal Code[2] section 1118.1 waives argument on appeal that the evidence was insufficient at that point to support conviction.
Victor James Smith was found guilty of two counts of burglary, receiving an access card intending to defraud, acquiring access card information with the intend to defraud, forgery of an access card and attempted grand theft. He was sentenced to a prison term of three years. Smith appeals, arguing insufficient evidence, error in the admission of prior convictions to impeach and in failing to strike the attempted grand theft conviction as a lesser included offense of acquiring an access card and access card information with the intent to defraud.

*1462 FACTS

A. Prosecution Case

On May 7, 1995, appellant went to the will-call desk at Home Depot on Sports Arena Boulevard and presented a typewritten list of items he wished to purchase, including the items' stock numbers and prices. The total amount of the purchases was $815.81. Appellant filled out a will-call form, giving his name, address and telephone number and gave the clerk a Discover charge card for payment.
The clerk ran the card through a magnetic reader and was prompted by the device to call the credit card company. She did so and was told to verify that the name on the card was that of the customer. The clerk asked for identification and appellant presented his driver's license. The signatures on the card and license appeared to be the same. When the clerk reported this to the credit card company representative, she was placed on hold. The clerk returned appellant's card and identification.
Appellant remained at the counter for a time, then stated he had to make a telephone call, would be back in a moment and left the store. The clerk voided appellant's transaction out of her register to free it for sales to other customers. After about 10 minutes, the credit card representative told the clerk there might be a problem with the card, the police had been called and if appellant returned for her to try to keep him in the store.
While the clerk was waiting for the credit card company to respond, appellant called on the telephone and asked if his sale had been rung up. The clerk stated the computer was down, everything was all right with the charge and it would be only a few moments more. Appellant stated he would return to the store and if there was any problem with the credit card he would pay by check.
Appellant returned. The clerk prepared new paper work. When the clerk asked for payment, appellant presented the same charge card. As the clerk again ran the card through the card reader, the police arrived and arrested appellant.
The Discover charge card presented by appellant was counterfeit. The account number on the card had belonged to Richard Stein since 1988. Stein did not know appellant and did not give appellant permission to use his account information. There was no Discover charge card account at any San Diego address for appellant.
*1463 An expert on credit card fraud explained the process used for producing counterfeit credit cards, including the placement on the card of magnetic strips bearing the account number, expiration date and other information. There are several methods counterfeiters use to get the account information from valid cards to place on the face and magnetic strip of the cards. There are several counterfeit rings in Southern California producing bogus credit cards. The cards are for sale on the street. In some instances the card is purchased and the buyer's name is put on it. In other cases the card is embossed with a fictitious name and comes with counterfeit identification in that name. The card presented by appellant was embossed with his name but the account information encoded on the magnetic strip was that of Richard Stein.

B. Defense Case

Appellant testified he had been unable to obtain a credit card. His son told him he knew someone at the Discover charge card company that might be able to get a card for him. Appellant filled out an application and gave it to his son. About a month later a Discover charge card in appellant's name was at his home when he returned from work. Appellant believed the card was legitimate.
Appellant stated the day he received the card he and his wife went to Home Depot to make purchases but could not take the items home that day. A clerk at the store prepared a typewritten list of the items so they could return and purchase them. Appellant made arrangements with a friend, Don Anders, to use his truck to pick up items appellant would put on will-call. It was for that reason appellant was at Home Depot the day of his arrest.

C. Rebuttal

Home Depot managers testified the typed list of items presented by appellant the day of his arrest would not have been generated in a Home Depot store. Don Anders testified that in May 1994 he suffered a stroke and could not drive a truck or load items at the time of appellant's arrest in May 1995.

DISCUSSION

A. Sufficiency of Evidence

Appellant argues the evidence was insufficient to support conviction on the charged offenses.

*1464 1. Evidence Subject to Review

Section 1118.1 requires the trial court in a jury trial on its own motion or the motion of the defense to acquit the defendant if at the close of the case of either party the evidence is insufficient to sustain conviction on appeal.[3] (1) When reviewing the denial of a motion to acquit for insufficient evidence made at the close of the prosecution's case, we consider only the evidence then in the record. (People v. Trevino (1985) 39 Cal.3d 667, 695 [217 Cal. Rptr. 652, 704 P.2d 719]; People v. Belton (1979) 23 Cal.3d 516, 526-527 [153 Cal. Rptr. 195, 591 P.2d 485].)
(2a) Appellant asserts the rule applies to his case even though he made no section 1118.1 motion since in his view the trial court is required sua sponte to grant acquittal when at the close of the prosecution's case the evidence is insufficient to sustain conviction. We disagree. Although no case has directly so held, we conclude the failure of the defense at the conclusion of the People's case to move for acquittal is a waiver of the claim that the evidence at that point was insufficient to sustain conviction.

a. Cases

In addressing the issue of whether a section 1118.1 motion is required to preserve for review the adequacy of the prosecution's case at its close, it is helpful to review cases dealing with related issues.
In People v. Belton, supra, 23 Cal.3d 516, the defendant at the close of the People's case moved for acquittal pursuant to section 1118 but did not state how the evidence was insufficient. The motion was denied. On appeal the defendant for the first time argued that at its close the prosecution's case was wanting since there was no evidence corroborating the crucial testimony of an accomplice as required by section 1111. (23 Cal.3d at pp. 519-520.)
The Attorney General argued the failure to specify the basis for the section 1118 motion precluded its consideration on appeal. Our Supreme Court held to the contrary. It noted sections 1118 and 1118.1 did not specify the form in which those motions had to be made. It concluded to require a defendant to specify the manner in which the prosecution's evidence was insufficient would present the defense with unacceptable alternatives. The defense would be forced to choose between "(1) specifying the defects in the prosecution's case, thereby affording the prosecutor an opportunity to seek *1465 to reopen the case in order to cure such defects; (2) making no motion and resting, thereby sacrificing his right to present a defense for fear that later evidence might cure the defects in the prosecution's case; or (3) making no motion, thereby waiving the right to challenge the prosecution's case-in-chief, and proceeding to present a defense." (People v. Belton, supra, 23 Cal.3d at p. 521.) The court stated requiring a specific objection would come "perilously close" to compelling a defendant to aid in his prosecution. (Id. at p. 522.)
Belton has not been universally praised. In People v. Martinez (1982) 132 Cal. App.3d 119 [183 Cal. Rptr. 256], the defendant made a motion at the close of the prosecution case which the majority interpreted as a section 1118 motion. The motion was a general one claiming there was no evidence the defendant committed the charged crimes. On appeal Martinez argued the prosecution in its case in chief had failed to corroborate the crucial testimony of an accomplice and he was entitled to an order of acquittal. (Id. at pp. 126-127.)
The majority found it inherently unfair to the trial court for Martinez to divert the court's attention from an evidentiary insufficiency by omitting its mention while raising other claims. Nonetheless, it concluded it was bound to reverse and ordered acquittal. In so doing, however, it urged the Supreme Court to reconsider Belton. (People v. Martinez, supra, 132 Cal. App.3d at pp. 127-133.)
In his dissenting opinion, Justice Staniforth took issue with the majority's conclusion that the defense had made an adequate section 1118 motion. Justice Staniforth stated Belton did not stand for the proposition that no section 1118 motion was required but only that no specification of the ground for the motion was required. He stated: "The majority's approach imposes an unfair and unrealistic burden on trial judges. The law requires the trial judge to determine an accomplice's status and the sufficiency of the corroboration of his testimony when made aware by some intelligible signal, a proper section 1118 motion is brought. No statute or decision has as yet been found that requires him to do so when no section 1118 motion is brought at all and his attention is, in fact, affirmatively diverted from a section 1118 quest by the defendant's representations. Trial judges are not required to assume the role of defense counsel and to make all appropriate motions on behalf of a defendant. The majority here comes dangerously close to imposing a Pope-type duty on the trial court to conduct an effective defense for the criminal defendant. The majority has created a new, an unwise and unneeded procedural rule to reach a socially abhorrent result." (132 Cal. App.3d at p. 142, fn. omitted.)
*1466 In People v. Ceja (1988) 205 Cal. App.3d 1296 [253 Cal. Rptr. 132], the defendant at the close of the prosecution case made a section 1118 motion directed at the sufficiency of the evidence of the charged offenses. He made no such motion with regard to prior conviction enhancement allegations. On appeal he argued the trial court erred in failing to order acquittal on the prior conviction allegations since no evidence concerning the allegations was offered until after the section 1118 motion was denied. (205 Cal. App.3d at pp. 1300-1302.)
The court in Ceja rejected the argument that when a section 1118 motion is made as to a specific count or allegation, the trial court is required to test every charge and allegation for sufficient evidentiary support. In rejecting the argument, the court stated: "Such an interpretation would impose upon a trial judge the obligation to divine all possible deficiencies in the evidence beyond counts and enhancements argued. We recognize the possible argument that under Belton a general section 1118 motion as to all counts and enhancements may place such a burden on the trial judge. However, we fail to see what salutary purpose is served by allowing a trial judge to be led by mistake or otherwise in the wrong direction by omitting specific allegations from the motion and including them in an evaluation of that motion on appeal." (People v. Ceja, supra, 205 Cal. App.3d at p. 1303.)
The court concluded when a section 1118 motion is specifically directed at a particular count or allegation, the trial court is not required to review the entire record in a search for any possible deficiency in any other count or allegation. (People v. Ceja, supra, 205 Cal. App.3d at pp. 1303-1304.)

b. Discussion

While not addressed directly in Belton, Martinez or Ceja, each case implicitly recognizes or suggests that a section 1118.1 motion, in some form, at the close of the prosecution's case is a necessary prerequisite to appellate review of the evidentiary adequacy of the People's case at that point in trial.
In Belton the court states that if a specific section 1118 objection was required, a defendant would be forced to choose between one of three unenviable choices. The third of those choices was to make no motion "thereby waiving the right to challenge the prosecution's case-in-chief." (People v. Belton, supra, 23 Cal.3d at p. 521.) If the trial court, as appellant suggests, has a sua sponte duty to consider the state of the evidence at the close of the prosecution case, defendants would face no such dilemma. We conclude the court in Belton reasoned from the premise that a section 1118 motion at the close of the prosecution's case was necessary to preserve for *1467 appellate review consideration of the adequacy of the People's case at that point in trial.
In Martinez the majority and dissenting opinions found it necessary to determine if the motion made by the defendant at trial qualified as a section 1118 motion. If the trial court is required to sua sponte review the adequacy of the prosecution case at its close, then there would have been no need for the Martinez court to argue over the adequacy of the section 1118 motion made by the defendant. (People v. Martinez, supra, 132 Cal. App.3d at pp. 127, 128, fn. 7, 129, 141-142.)
In Ceja the court concluded a section 1118 motion made at the end of the prosecution case as to particular counts or enhancements did not require the trial court undertake a review of the adequacy of the evidence concerning unmentioned counts and enhancements. The failure to mention additional counts and enhancements in the motion was treated as a waiver of any argument on appeal that when closed the prosecution's evidence was inadequate to prove any of the unmentioned counts or enhancements. (People v. Ceja, supra, 205 Cal. App.3d at pp. 1300-1304.)
Such a conclusion logically rejects any claim that the trial court at the close of the prosecution's case must, in the absence of a motion by the defendant, determine the adequacy of the evidence as to all charges. This is so since the defendant's motion as to some counts or enhancements would not affect the court's independent duty to review the others and the requirement for review must arise, therefore, from the defendant's motion and not some sua sponte duty.
This implicit recognition in Belton, Martinez and Ceja, i.e., that appellate review of the adequacy of the prosecution's case at its close is waived absent a section 1118.1 motion, is in keeping with the rule that to encourage economy and fairness, motions and objections are waived if not brought in a timely manner. (See Doers v. Golden Gate Bridge etc. Dist. (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal. Rptr. 837, 588 P.2d 1261]; People v. Neal (1993) 19 Cal. App.4th 1114, 1117-1118 [24 Cal. Rptr.2d 129].)
(3) Contrary to appellant's argument, we find nothing in the language of sections 1118 or 1118.1 suggesting the trial court has a duty, absent a request, to review the prosecution case at its close to determine its evidentiary sufficiency. Section 1118.1 states: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side ..., shall order the entry of a judgment of acquittal of one or more of the offenses ... if the evidence then before the court is *1468 insufficient to sustain a conviction of such offense or offenses on appeal." We read the word "shall," which usually indicates a mandatory act, not as a requirement the trial court review the adequacy of the prosecution's case but as a requirement that if the court does determine the evidence to be insufficient, it is required to order acquittal.
(2b) While we conclude the usual appellate rule applies and a failure to bring a section 1118.1 motion at the close of the prosecution case waives any claim the evidence was at that point inadequate, we recognize the state of section 1118.1 law is, in this regard, anomalous.
The law generally requires not only a timely but a specific objection or motion to preserve an issue for appeal. The combination of the rules announced in Belton, Ceja and the present case suggest that tactically it may most often be better for the defendant to make a less rather than more specific motion. In this case we require defendants make a section 1118.1 motion to preserve for review the issue of the adequacy of the prosecution case. Belton, however, requires no specification by the defendant of the insufficiency perceived. Ceja, on the other hand, restricts appellate consideration to the sufficiency of counts or enhancements mentioned in the motion. It is clear that unless the defendant has a very good reason not to do so, the close of the prosecution's case should always be followed by a nonspecific section 1118.1 motion directed at all counts and enhancements.
We think this mechanistic result with its potential for injustice is both unfortunate and unnecessary. One approach to correcting the problem would be to adopt the position of the federal circuits in reviewing motions under Federal Rules of Criminal Procedure, rule 29(a) (28 U.S.C.) (the federal version of § 1118.1) and hold that the presentation of defense evidence waives any claim that at the close the prosecution's case the evidence was insufficient. (See United States v. Foster (D.C. Cir.1986) 783 F.2d 1082, 1083-1086 [251 App.D.C. 267].)
Another approach would be to reject Belton and hold that a section 1118.1 motion must state a specific claim of insufficiency. It is the intent of section 1118.1 to give the defendant the right to bring a motion for acquittal at the close of the prosecution's case. In order for this to be a meaningful right and not merely a tactical device, it seems to us the defendant must state the basis for the motion. Such a requirement may certainly present the defense with hard choices but we do not believe such tactical difficulty amounts to a denial of due process or any other right. Even in the present system in which the defendant is allowed to make a nonspecific section 1118.1 motion and still preserve any claim of insufficient evidence for appeal, a defendant might decide to make no motion at all for fear the evidentiary defect would be perceived and corrected.
*1469 In any event we conclude a defendant, like appellant, who does not move for acquittal pursuant to section 1118.1 at the close of the prosecution's case, waives any claim that the evidence was at that point insufficient.

2. Sufficiency of Evidence

Appellant makes two claims of insufficiency. First, noting each of the charged offenses required either an intent to defraud or an intent to steal, he argues the evidence was insufficient to demonstrate such intent. Second, as to his conviction for acquiring access card account information with respect to an access card validly issued to another (§ 484e, subd. (e)), appellant contends there was no evidence it was he who initially gathered that information. As noted appellant made no section 1118.1 motion at the close of the prosecution's case and we, therefore, review the entire record in assessing the sufficiency of evidence.

a. Law

(4) In determining whether the evidence is sufficient to support the verdict we review the entire record viewing the evidence in the light most favorable to the judgment and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (People v. Brown (1995) 35 Cal. App.4th 1585, 1598 [42 Cal. Rptr.2d 155].)
(5) "`[I]ntent is inherently difficult to prove by direct evidence. Therefore, the act itself together with its surrounding circumstances must generally form the basis from which the intent of the actor may legitimately be inferred.' [Citation.]" (People v. Edwards (1992) 8 Cal. App.4th 1092, 1099 [10 Cal. Rptr.2d 821].)

b. Discussion

(6) The evidence was sufficient to conclude appellant harbored the required larcenous or fraudulent intent required for each of the crimes. Appellant attempted to make purchases with a counterfeit card bearing his name but with the account information from a valid card. While there might be some innocent explanation for such an event, and appellant attempted to give one, the event is, at least, highly suspicious. When it appeared there might be a problem with the card's acceptance, appellant left the store stating he had to make a telephone call. Appellant did not immediately *1470 return to the counter but first telephoned the sales clerk to check on the status of the approval. It is reasonable to conclude appellant did so since, knowing the card was counterfeit, he wanted, from a distance, to check on the progress of his purchase. Told all was well, appellant unwisely returned.
Appellant's testimony and the prosecution's rebuttal further damaged appellant's case. The presentation by appellant of a counterfeit credit card bearing his name was so incriminating, it was incumbent on him to provide an explanation. The story given, i.e., that appellant's son, who did not testify, got the counterfeit card for him and that appellant had no reason to believe it other than valid, was less than credible. In telling that story, appellant claimed the typewritten list of items to be purchased was prepared for him by a store employee. This claim was refuted by the People's rebuttal evidence as was his claim that the items were to be picked up by his friend Don Anders.
There was sufficient evidence to conclude appellant acquired the counterfeit credit card and the account information on it with the intent to defraud. There is sufficient evidence appellant entered the Home Depot store with that card to commit a theft and that he attempted to do so.
(7) Contrary to appellant's claim, the evidence was also sufficient to convict him of acquiring access card information with respect to an access card validly issued to another (§ 484e, subd. (e)). Appellant argues: "There was absolutely no evidence offered at any time that Appellant actually did the leg work to obtain the access card account information (of another) that was encoded in the card." Section 484e, subdivision (e), reads: "Every person who acquires access card information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently is guilty of grand theft."
If appellant is arguing that only the person who first acquires this information with the requisite intent is guilty of the crime, we disagree. We interpret the crime to apply to any person who acquires that information with the intent to use it fraudulently. There was certainly evidence appellant acquired the card in this case knowing it bore information from a validly issued access card and with the intent to use the card fraudulently.

B. Impeachment[*]
.... .... .... .... .... .... .... .

*1471 C. Necessarily Included Offenses

(8a) Appellant argues his conviction for attempted grand theft should be stricken since it is necessarily included in his convictions for receiving an access card with the intent to defraud and acquiring access card information without consent with respect to an access card validly issued to another person and with the intent to use it fraudulently.
(9) A defendant may not be convicted of both a greater and a "lesser included offense" based on the same conduct. (People v. Pearson (1986) 42 Cal.3d 351, 355 [228 Cal. Rptr. 509, 721 P.2d 595]; People v. Moran (1970) 1 Cal.3d 755, 763 [83 Cal. Rptr. 411, 463 P.2d 763].) A "lesser included offense" is one which is necessarily committed when a related greater offense is committed. (§ 1159; People v. Greer (1947) 30 Cal.2d 589, 596 [184 P.2d 512]; People v. Pearson, supra, 42 Cal.3d at p. 359; People v. West (1970) 3 Cal.3d 595, 612 [91 Cal. Rptr. 385, 477 P.2d 409]; In re Hess (1955) 45 Cal.2d 171, 174 [288 P.2d 5]; In re Robert G. (1982) 31 Cal.3d 437, 441 [182 Cal. Rptr. 644, 644 P.2d 837].) The lesser offense is "necessarily committed" by committing the greater offense only if all legal elements of the lesser offense are also elements of the greater: "A crime is an included offense if all its elements are also elements of the other crime, so that substantially the same facts would be required to prove the commission of either. And a crime is not an included offense if any of its elements is not an element of the other crime, so that one requires proof of some fact in addition to the facts required to establish the other. [Citations.]" (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 325, at p. 376.)
As noted, the rule that a defendant may not be convicted of a greater and lesser offense applies only when the crimes arise from the same conduct. Thus, while second degree murder is a lesser included offense of first degree murder, there is no requirement a conviction for second degree murder be stricken in the face of a conviction for first degree murder if the convictions arise from separate incidents.
(8b) In this case appellant was convicted of attempted grand theft based on his attempt to take property from the Home Depot store with a "bogus" credit card. The crimes of receiving an access card with the intent to defraud and of acquiring access card account information with the intent to use it fraudulently were necessarily completed before appellant entered the store and the attempted theft offense was not the automatic by-products of those crimes. While all those crimes may nominally be species of grand theft, they did not arise from the same conduct and none is a lesser included offense of the other.
*1472 The judgment is affirmed.
Huffman, J., and Haller, J., concurred.
Appellant's petition for review by the Supreme Court was denied October 14, 1998. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion part B.
[2] All further statutory references are to the Penal Code.
[3] Section 1118 provides for such a motion in court trials.
[*] See footnote, ante, page 1458.