Filed 2/19/14  In re K.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K. B, a Person Coming Under the Juvenile Court Law. | |
| | D063200 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J231904) |
| v. | |
| K. B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Reversed.

Thomas Eugene Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles G. Ragland and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant K. B. (K.) appeals from an order of the trial court declaring her to be a ward of the court under Welfare and Institutions Code section 702. K. raises a number of contentions on appeal, including: (1) that the trial court violated her right to due process of law by finding the allegations against her to be true, despite having stated that the court found the testimony of both the police officer and K. to be credible; (2) that there is insufficient evidence to sustain the true finding that she made a false statement of identity to the officer while detained or under arrest; (3) that the trial court erred in denying her motion to dismiss the allegation that she was in possession of a tobacco product because at the close of the prosecution's case, no evidence regarding tobacco had been presented;[1] and (4) that the trial court imposed an unconstitutionally broad probation condition when it prohibited K. from using force, threats, or violence, even in self-defense.

We agree with K. that the trial court erred in denying her motion to dismiss with respect to both counts of the petition because the evidence presented by the prosecution was insufficient with respect to both of the allegations against her. We therefore reverse the trial court's true findings on both counts.

---

[1] K. contends, in the alternative, that if this court determines that she failed to preserve this argument because her motion to dismiss did not encompass count 2, the tobacco possession count, then her trial counsel rendered ineffective assistance.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The prosecution's evidence*

On the afternoon on February 22, 2012, police received a report of a disturbance involving two "females."  When San Diego Police Officer John Sullivan arrived at the location from which the call had been made, a witness directed Sullivan to an alley where he had seen two girls running.

Officer Sullivan made contact with the two girls.  Sullivan asked one of the girls what her name was and how old she was.  The girl told Sullivan that her name was "Ashley L[.] W[.]" and that she was 18 years old.  The girl indicated that her birth date was March 14, 1993.  Sullivan attempted to verify the girl's identity by doing a computer records check, but was unable to locate a record of her.  Sullivan told the girl that he did not believe that she had given him truthful information and asked her again for her birth date.  This time she told Sullivan that her date of birth was March 14, 1994.  Sullivan did another records check but was still unable to locate any record.

Officer Sullivan then separated the two girls and asked the other girl, whose name was Hope, what the first girl's name was.  Hope provided a different name from the one the first girl had given.  Sullivan checked this name in his computer system and located a Department of Motor Vehicles (DMV) photograph of K.  Sullivan confronted the first girl with the DMV information, and she admitted that she had lied and that her name was K. B.  Sullivan then inquired about the girl's eye color, noting that the eye color of the person in the DMV photograph did not look similar to the eye color of the girl with

whom he was speaking.[2]  The girl replied that she often wears colored contact lenses, and said that she had been wearing them at the time the DMV photograph was taken. The encounter lasted approximately 45 minutes.

B.  *The defense evidence*

K.'s overall defense was that Officer Sullivan had encountered K.'s sister, Karley, and not K., on the day in question.  This would explain the difference in eye color between the person Officer Sullivan stopped and the photograph in the DMV record.

K. testified that she was born on August 18, 1995 and that she has blue eyes.  She further testified that on the day in question, she had gone to school and returned to her mother's home in Jamul at just before 1:00 p.m.  According to K., she had not been near the street where Officer Sullivan encountered the two girls at any time that day, and she had not seen her sister Karley or Karley's friend Hope that day.

K.'s older sister Karley testified that on February 22, 2012, she took a taxi ride with her friend Hope to the home of another friend who lived near the scene of this incident.  The two girls did not have sufficient funds to pay for the taxi ride.  When the girls were unable to pay the taxi driver, he called the police.  Karley said that the police officer confronted her and Hope in an alley.  Karley was smoking a cigarette at that time. Karley testified that she initially gave the officer a false name but provided her actual birth date, which is March 14, 1994.  After the officer suggested that she was lying,

---

[2]  The DMV photograph showed a person with blue eyes.  The girl that Sullivan stopped, who ultimately identified herself as K. B., had brown eyes.

4

Karley gave her name as K. B.  Karley explained that she had given the false names because she was a runaway and there was a warrant out for her arrest.

Hope testified that Officer Sullivan had encountered her and Karley, not K., in the alley on the afternoon of February 22, 2012.

C.    *Procedural background*

The San Diego County District Attorney filed a petition under Welfare and Institutions Code section 602, alleging that K. had made a false representation of identity to a police officer (Pen. Code, § 148.9, subd. (a); count 1) and had possessed a tobacco product (Pen. Code, § 308, subd. (b); count 2).

After holding an adjudication hearing, the trial court found the allegations of the petition to be true, declared K. a ward of the court, imposed a term of probation, and placed K. with her mother.

K. filed a timely notice of appeal.

### III.

### DISCUSSION

K. contends that the trial court erred in denying her motion to dismiss the petition because there is insufficient evidence to support the court's true finding that she was detained or arrested at the time she made the false statements (count 1), or that she possessed a tobacco product (count 2).[3]

---

[3]    K. continues to suggest on appeal that she was not the person whom Officer Sullivan contacted on February 22, 2012.  She contends that the trial court violated her right to due process by finding her to be credible yet nonetheless crediting Officer Sullivan's testimony and finding that it was K., and not Karley, who was involved in the incident.  In the alternative, K.

A.    *There is insufficient evidence that the minor made a false statement of identity while detained or arrested*

K. contends that the trial court erred in denying her motion to dismiss count 1 because even assuming that she is the person whom Officer Sullivan contacted on the day in question, the People failed to present sufficient evidence that she was detained when she made a false representation of identity to the officer.

1.    *Additional background*

At the time the trial court considered K.'s motion to dismiss the petition, Officer Sullivan had testified to the following facts regarding his encounter with the girls:  He received a "radio call of a disturbance" involving "two females," but it was "unknown exactly what was happening."  When Sullivan arrived at the location of the reported incident, a witness directed him to an alley where the witness had seen "two females [that] had just ran that way."  Sullivan approached two girls who appeared to be nervous, one of whom he described as "youthful looking."  Sullivan asked the girl how old she was, and she responded that she was 18 years old.  The girl stated that her name was "Ashley L[.] W[.]" and said that she was born on March 14, 1993."  Sullivan conducted a records check for approximately 10 minutes and found no matches.  Sullivan then asked the girl for her birth date again, and this time she said that it was March 14, 1994.  Sullivan ran another records check and again came up with nothing.  After separating the girls, the other girl gave Sullivan a different name for her friend.  A records check for that

argues that the evidence pertaining to the specific allegations is insufficient to establish her guilt. For the purpose of addressing K.'s alternative arguments, we assume that that she is the individual with whom Officer Sullivan made contact that day.

6

name provided a DMV photograph of K. When Officer Sullivan confronted the first girl with the DMV report, she admitted that she had lied. Sullivan then "arrested" the girl, but did not take her into custody.

After Sullivan testified as the sole prosecution witness and the prosecution had rested, K.'s attorney moved to dismiss the petition under Welfare and Institutions Code section 701.1. The trial court denied the motion.

2.      *Legal standards*

Welfare and Institutions Code section 701.1 is substantially similar to Penal Code section 1118, which governs motions to acquit in criminal trials. The " 'rules and procedures applicable to [Penal Code] section 1118 . . . apply with equal force to juvenile proceedings.' [Citation.]" (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727.)

" ' "The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to [Penal Code] section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' " [Citation.] "The purpose of a motion under [Penal Code] section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case." [Citations.] The question "is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination." [Citation.] The sufficiency of the evidence is tested at the point the

7

motion is made. [Citations.] The question is one of law, subject to independent review.' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 522.)

3.      *Discussion*

The trial court determined that K. gave a false identity to a police officer in violation of Penal Code section 148.9, subdivision (a). That statute provides:

> "Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, *upon a lawful detention or arrest of the person*, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." (Italics added.)

In drafting this criminal provision, "the Legislature denoted two specific situations under which [Penal Code] section 148.9 was to apply: lawful detentions and lawful arrests." (*In re Voeurn O*. (1995) 35 Cal.App.4th 793, 796 (*Voeurn O.*).) From this "[w]e may . . . infer an intent to exclude other circumstances." (*Ibid*.)

In 1982, when Penal Code section 148.9 was enacted, "the United States Supreme Court had drawn a clear distinction between detentions and arrests on the one hand, and on the other, consensual police encounters . . . ." (*Voeurn O.*, *supra*, 35 Cal.App.4th at p. 796, citing *United States v. Mendenhall* (1980) 446 U.S. 544, 550-555 (*Mendenhall*) [only detentions and arrests implicate Fourth Amendment].) Courts have thus presumed that the Legislature was aware of this distinction in enacting Penal Code section 148.9. (*Voeurn O.*, *supra*, at p. 796.)

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no

8

restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).) "The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions." (*Ibid.*) "Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur [thereby rendering the encounter a detention]." (*Ibid.*) " '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.]" (*Ibid.*)

"Circumstances establishing a seizure [and thus a detention] might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*Manuel G., supra*, 16 Cal.4th at p. 821.) In general, an officer stopping to ask a pedestrian on the street some questions does not rise to the level of a detention: "*Approaching [a] minor in a public place and asking him [or her] questions [a]re not actions in themselves constituting coercive police conduct that would lead a reasonable person to believe that he or she was not free to leave*." (*Id.* at p. 822, italics added.)

9

There is insufficient evidence that the initial encounter between K. and Sullivan was a detention. K. was in an alley when she was contacted by a lone police officer, who asked for her name and age. There was no evidence that Officer Sullivan brandished his weapon or made any show of force. Nor was there evidence that Sullivan made a threat or any other act of intimidation, let alone a command. (See *Manuel G., supra*, 16 Cal.4th at pp. 822-823 [a consensual encounter occurred where officer "did not draw his gun or deter or stop the minor from continuing what he was doing" but approached the minor in a public place and asked him questions; even "continued questioning of the minor d[id] not suggest that the encounter was a detention"].) Officer Sullivan's approaching K. in a public place and asking her questions is a classic consensual encounter, and does not constitute coercive police conduct that would lead a reasonable person to believe that he or she was not free to leave.

Officer Sullivan's testimony that he conducted a records check with respect to K. does not constitute sufficient evidence to support a finding that K. gave a false identity while detained or arrested. In *People v. Bennett* (1998) 68 Cal.App.4th 396 (*Bennett*), police officers saw the defendant talking to a known prostitute. One officer approached the defendant and asked, " 'Can I talk to you for a moment? ' " The defendant said " 'Yes.' " (*Id.* at p. 399.) After recognizing the defendant, the officer asked him "if he was still on parole." (*Ibid*.) When the defendant replied that he was, the officer asked "whether he would be willing to wait in the patrol car while he 'ran him for warrants.' " (*Ibid*.) The defendant agreed to wait in a patrol car while the officer conducted a records check for warrants. "No physical force was required or threatened; no handcuffs or other

10

restraints were applied." (*Ibid*.)  While the defendant waited in the back of the officer's patrol car, the officer ran a records check on the defendant.  (*Ibid*.)

The defendant challenged the admission of evidence found in his possession after he was arrested, on the ground that the initial encounter between the officer and the defendant was an illegal detention.  On appeal, the *Bennett* court concluded, "We do not see it that way.  In fact, we do not find the initial contact between Bennett and the police implicated the Fourth Amendment at all." (*Bennett*, *supra*, 68 Cal.App.4th at p. 401.) Rather, "[u]nder these circumstances, [the defendant's] initial contact with [the officer] was a classic consensual encounter." (*Id*. at p. 402.)

The evidence in the present case demonstrates that the encounter between Officer Sullivan and K. was no more coercive than the encounter between the officer and the defendant in *Bennett*.  If anything, the absence of any evidence that Officer Sullivan asked K. to sit in a patrol car while he conducted the records check demonstrates that the encounter in this case was *less* intrusive or coercive than the encounter at issue in *Bennett*.  The evidence presented by the prosecution in this case thus simply cannot support a finding that K. gave the false identity information during a detention or arrest.

In response to K.'s argument on appeal, the People suggest that "[a]n officer's act of chasing after a fleeing suspect can also indicate a detention."  The People cite *People v. Washington* (1987) 192 Cal.App.3d 1120, 1125-1126 (*Washington*), a case in which several police officers approached the defendant and four other individuals, the defendant tried to run away, and the officers chased the defendant for two minutes until he discarded a bag that contained drugs.  (*Id*. at p. 1122-1123.)  The *Washington* court

11

stated, "[T]he moment that the officers gave chase, [] a reasonable belief that the officers wanted to talk with him changed into a definite signal to defendant that he was not free to leave." (*Id*. at p. 1125.) However, as the People concede, the *Washington* court's analysis has been questioned, and the opinion "contain[s] language contrary to the existing federal standards set out in *Michigan v. Chesternut* [(1975)] 486 U.S. 567 [(*Chesternut*)] regarding seizures under the Fourth Amendment ensuing from the flight of a suspect." (*In re Christopher* (1990) 219 Cal.App.3d 455, 461-462.)[4]

Even assuming that the rule in *Washington* is valid, however, it is of no use to the People because there is no evidence that there was a pursuit in this case. The People argue that based on Officer Sullivan's testimony that a witness directed him to an alley with "regard[] [to] two females [who] had just ran that way," and that Sullivan thereafter "ma[de] contact" with two girls, one can "reasonably infer that the officer had to chase

---

[4]     In *Chesternut*, the United States Supreme Court left open the determination of what circumstances involving a police pursuit could amount to a seizure, and reaffirmed the test set out in *Mendenhall, supra,* 446 U.S. 544, that "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.' [Citations.]" (*Chesternut*, *supra*, 486 U.S. at p. 573.) Such a test "is designed to assess the coercive effect of police conduct, taken as a whole." (*Ibid*.) The *Chesternut* court explained that although the presence of a patrol car driving alongside a fleeing pedestrian could be intimidating, it was not so intrusive that the suspect could "reasonably have believed he was not free to disregard the police presence and go about his business." (*Id*. at p. 576.)

       Further, in *California v. Hodari D.* (1991) 499 U.S. 621 (*Hodari D.*), the Supreme Court concluded that a seizure of a suspect does not occur for Fourth Amendment purposes when a suspect fails to yield in the face of a show of authority or the application of physical force by police. (*Id*. at p. 626.) "[N]either usage nor common-law tradition makes an *attempted* seizure a seizure." (*Id*. at p. 626, fn. 2.) The continued validity of the holding of *Washington*, *supra*, 192 Cal.App.3d at p. 1125, is questionable after *Hodari D.*

12

the girls and stop them in order to 'make contact.' "  Contrary to the People's assertion, this is not a reasonable inference but rather, a speculative leap from the evidence. Sullivan gave absolutely no indication that he chased the two girls or that they were running at the time he encountered them.  It is simply not reasonable to infer that because a witness saw two girls running into an alley *before* Sullivan arrived on the scene, that the girls ran away from Sullivan, or that he gave chase in any way.

The People point to no other evidence that would support a finding that K. was detained or arrested at the time she provided the false information about her identity, and we have found none in the record.

Simply put, after K. gave the second false birth date, she made no other false statements about her identity.  At the point in time when she provided this information, she had simply been contacted by a lone police officer who asked her a few questions, but who had not indicated in any way that her freedom was being restrained or that she was not free to end the encounter.  Further, there is no evidence of a pursuit.  The record thus does not support a finding that K. was detained at the time she provided the false identity.  Rather, the evidence points solely to the conclusion that the encounter was consensual at the time she made the false statements.  As a result, there was insufficient evidence to support the true finding with respect to count 1, i.e., the allegation that K. made a false representation of identity to a police officer in violation of Penal Code section 148.9, subdivision (a).  The true finding as to count 1 is therefore reversed.

13

B.      *The trial court erred in denying K.'s motion to dismiss count 2*

K. contends that the trial court erred in denying her motion to dismiss count 2 because the prosecution presented no evidence in its case-in-chief that she possessed a tobacco product.

The legal standards that we described in part III.A.2., *ante*, with respect to reviewing a trial court's denial of a motion made pursuant to Welfare and Institutions Code section 701.1 are also applicable to K.'s contention regarding count 2.  Count 2 alleged that K. possessed a tobacco product, in violation of Penal Code section 308, subdivision (b).  That statute provides:

> "Every person under the age of 18 years who purchases, receives, or possesses any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking of tobacco, products prepared from tobacco, or any controlled substance shall, upon conviction, be punished by a fine of seventy-five dollars ($75) or 30 hours of community service work."

The People appear to concede that the prosecution failed to present any evidence that K. possessed a tobacco product during its case-in-chief.  However, the People maintain that K.'s Welfare and Institution Code section 701.1 motion was directed only to count 1 and that K. has thus forfeited this claim as to count 2.  In the alternative, the People contend that the denial of K.'s motion to dismiss was harmless because the court could have reopened the case to allow the prosecution to present the necessary evidence.

14

A review of the transcript confirms that the People presented *no* evidence from which one could infer that K. possessed a tobacco product, since Officer Sullivan did not mention cigarettes or any other tobacco product during his testimony.[5]

> 1. *K. did not forfeit her challenge to the court's denial of her motion to dismiss with respect to count 2*

We first address the People's contention that K. has forfeited this claim because her motion to dismiss the petition was limited to count 1. The People concede that "[g]enerally, a defendant is not required to provide the specific grounds for a motion to dismiss," but nevertheless contend that "when a motion to dismiss is specifically directed at a particular count, [the defendant] 'waives any argument on appeal that when closed the prosecution's evidence was inadequate to prove any of the unmentioned counts or enhancements.' [Citation.]" The People assert that K.'s motion to dismiss was directed solely to count 1, and argue that her motion did not preserve for appellate review her claim as to count 2. Our review of the record, as well as the relevant authorities, does not support the People's position.

At the close of the prosecution's case, defense counsel moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1, stating: "Your Honor first I would make a 701.1 motion to dismiss. I think there is significant variation between what is in the police report, what the officer testified to, versus whatever it is [in] that D.M.V. printout that is before the court." When given the opportunity to respond, the prosecutor said:

---

[5]     Officer Sullivan was the prosecution's sole witness.

"Your Honor, at this time the charge of the minor states that it's [Penal Code section] 148.9 (a) and that is giving false information to a police officer. As it was reported by Mr. Sullivan on the stand, as well as it was in the police report and what has come out through evidence it is clear that the minor, in which [sic] is in front of the court today, Officer Sullivan has identified as the minor on that day of February 22nd, 2012, and she did give the false name of Ashley L[.] W[.] and repeatedly gave two birth dates that were not the same as which day she was born and therefore satisfies the requirements of 148.9(a)."

The trial court responded, "Based on the state of the evidence, [the Penal Code section] 701.1 motion is denied and that is based on the officer's testimony and the in-court identification."

*People v. Smith* (1998) 64 Cal.App.4th 1458, 1467 (*Smith*), on which the People rely, does not persuade us that K.'s motion was insufficient to preserve her challenge to count 2 on appeal. In *Smith*, the court determined that the trial court has no independent duty, "absent a request, to review the prosecution case at its close to determine its evidentiary sufficiency." (*Ibid*.) The *Smith* court concluded that "a failure to bring a section 1118.1 motion at the close of the prosecution case waives any claim the evidence was at that point inadequate." (*Id*. at p. 1468.)

The *Smith* court recognized that "the state of section 1118.1 law is . . . anomalous," in that it requires a generalized objection, rather than a specific objection. (*Smith, supra*, 64 Cal.App.4th at p. 1468.) As the *Smith* court explained:

"The law generally requires not only a timely but a specific objection or motion to preserve an issue for appeal. The combination of the rules announced in [*People v. Belton* (1979) 23 Cal.3d 516 (*Belton*)], [*People v. Ceja* (1988) 205 Cal.App.3d 1296 (*Ceja*)] and the present case suggest that tactically it may most often be better for the defendant to make a less rather than more specific motion. In

16

this case we require defendants make a section 1118.1 motion to preserve for review the issue of the adequacy of the prosecution case. *Belton*, however, requires no specification by the defendant of the insufficiency perceived. *Ceja*, on the other hand, restricts appellate consideration to the sufficiency of counts or enhancements mentioned in the motion. It is clear that unless the defendant has a very good reason not to do so, the close of the prosecution's case should always be followed by a nonspecific section 1118.1 motion directed at all counts and enhancements." (*Smith*, *supra*, at p. 1468.)

The reason that this is so is because to "construe . . . section [1118.1 as requiring a defendant to include a statement of specific grounds to support the motion] would force a defendant to face the same kind of dilemma from which the Legislature sought to extricate defendants. In effect, a defendant would be forced to choose between: (1) specifying the defects in the prosecution's case, thereby affording the prosecutor an opportunity to seek to reopen the case in order to cure such defects; (2) making no motion and resting, thereby sacrificing his right to present a defense for fear that later evidence might cure the defects in the prosecution's case; or (3) making no motion, thereby waiving the right to challenge the prosecution's case-in-chief, and proceeding to present a defense." (*Belton, supra,* 23 Cal.3d at p. 521.) "Forcing a defendant to elect among these alternatives would deny him the intended protection of the section. Further, to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case. *Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt*." (*Id.* at pp. 521-522, italics added.)

17

The motion made by defense counsel in this case is precisely the kind of "nonspecific" motion suggested by the *Smith* court. In contrast to *Smith*, K.'s attorney did not fail to bring a Welfare and Institutions Code section 701.1 motion. Further, the trial transcript makes it clear that when K.'s attorney made his Welfare and Institutions Code section 701.1 motion, he did not direct the motion to count 1, alone. Rather, he made a general motion to dismiss, without referring to either count. In his argument, he raised the question of identity, and specifically, whether the People's petition was directed at the proper individual. By raising a question of identity, defense counsel was questioning the sufficiency of the evidence to find true *either* of the allegations against K., not simply the allegation in count 1. It was the prosecutor, not defense counsel, who focused her opposition to the motion solely to the charge in count 1. However, the fact that the prosecutor failed to address the motion with respect to count 2 does not alter the fact that the motion to dismiss was "nonspecific" and was directed to the entire petition, not just to a single count. We therefore reject the People's contention that K. has forfeited this claim on appeal.

2.  *The court's error was not harmless*

We next address the People's contention that any error in denying the motion to dismiss as to count 2 was harmless because the trial court could have allowed the prosecution to reopen its case to present evidence pertaining to the charge in count 2. The People rely on *Ceja, supra,* 205 Cal.App.3d 1458 in support of this contention. As the People note, in *Ceja*, the prosecution rested without presenting any evidence regarding the defendant's prior convictions. Although the defendant made a motion for

18

acquittal at the close of the prosecution's case, that motion "was directed to counts I and II," but *not* to the "separate enhancement." (*Ceja*, *supra*, at p. 1303.) The *Ceja* court concluded that in making a motion for acquittal pursuant to Penal Code section 1118, the defense should have identified the unmentioned separate enhancement in the motion, in addition to the two counts that were identified, if the defense wanted to preserve an appellate challenge to the court's ruling on the motion for acquittal as to the sufficiency of the evidence to support the enhancement. (*Ceja, supra,* at pp. 1303-1304.)

During closing argument in *Ceja*, the prosecution's failure to present any evidence regarding the defendant's prior convictions was brought to light, and the prosecutor moved to reopen the case to admit evidence of the priors. (*Ceja*, *supra*, 205 Cal.App.3d at p. 1300.) In reviewing the trial court's decision to allow the prosecution to introduce that evidence, the *Ceja* court concluded that the trial court had not abused its discretion in allowing the prosecution to reopen its case. (*Id*. at p. 1304.) According to the People, "The [*Ceja*] court explained the defendant's motion did not legally preclude the reopening of the prosecution's case, and defendant 'was not prejudiced because the new evidence did not come as a surprise, nor did it impose an undue burden on the defense; the prior conviction had been an issue in the case from the time the information was filed.' [Citation.]"

Based on this description of what occurred in *Ceja*, the People argue that in the present case, the trial court *could have* exercised its discretion to allow the prosecutor to reopen the case and introduce evidence sufficient to support count 2, after K.'s attorney made his motion to dismiss the petition. However, in *Ceja*, the trial court *had* exercised

19

its discretion to allow the prosecutor to reopen the People's case and the People proceeded to present evidence of the defendant's prior convictions. The appellate court in *Ceja* was reviewing the trial court's decision to allow the prosecutor to reopen the People's case; the court was *not* considering whether the trial court erred in denying the defendant's motion for acquittal under Penal Code section 1118.1 or whether such error was prejudicial, which are the issues here. (See *Ceja*, *supra*, 205 Cal.App.3d at p. 1304.) In this case, there was no request by the People to reopen their case to present additional evidence, let alone an order of the court allowing the People to present additional evidence.[6] If we were to accept the People's argument that K. was not prejudiced by the trial court's denial of her motion to dismiss the petition because the prosecution *could have* presented evidence sufficient to support the charge in count 2, this would eviscerate the rule requiring that we review the trial court's ruling on a motion for acquittal/motion to dismiss based on the state of the evidence at the time the motion was made. If the People's argument were correct, then the prosecution could argue on appeal in virtually every case in which it failed to meet its burden to present sufficient evidence, that it *could have* presented additional evidence if given the opportunity. This clearly cannot be the rule. The People's argument that K. was not prejudiced because the trial court could have

---

6       In addition, unlike in *Ceja*, where the defendant *failed* to make a motion to acquit with respect to the relevant enhancement allegation and the trial court permitted the People to reopen their case to introduce additional evidence pertaining to that allegation after the People had rested, in this case, K. did make a sufficient motion to dismiss count 2.

20

exercised its discretion to allow the prosecution to reopen its case is entirely without merit.

As the People essentially concede (necessarily, given the state of the record), there was insufficient evidence to support the true finding with respect to count 2, i.e., the allegation that K. possessed a tobacco product in violation of Penal Code section 308, subdivision (b) at the time K.'s attorney moved to dismiss this count. The trial court thus erred in denying the motion to dismiss count 2. The true finding as to count 2 is therefore reversed.

C.    *K.'s other contentions are rendered moot by our conclusion that the trial court's true findings as to both counts alleged against her must be reversed.*

K. raises two additional arguments in her briefing on appeal. She contends that the trial court violated her due process rights by failing to properly apply the legal standard of reasonable doubt to her case, undermining the court's true findings with respect to both counts. She also contends that the trial court's probation condition prohibiting her from using "force or threats" is unconstitutionally overbroad and must be modified in order to narrow its scope. Because we are reversing the trial court's true findings with respect to the only two counts alleged in the petition, there is no need for us to address these additional contentions.

IV.

DISPOSITION

We reverse the order finding the allegations of the petition filed against K. on July 20, 2012, to be true.

_____

AARON, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

NARES, J.

22