Filed 6/17/24  P. v. Butler CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B327403 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA139642-01) |
| v. | |
| ALBERT BUTLER, | |
| Defendant and Appellant. | |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Following his involvement in a 2016 armed robbery and shooting, appellant Albert Butler pled no contest to premeditated attempted murder and was sentenced to 25 years to life. In January 2022, Butler filed a petition for resentencing pursuant to Penal Code[1] section 1172.6, and the trial court set the matter for an evidentiary hearing. Following the evidentiary hearing the court denied Butler's petition based on its finding that Butler was guilty of attempted murder under current law as a direct aider and abettor who acted with intent to kill.

Butler contends the evidentiary record is insufficient to support the court's finding. We conclude the record supports the trial court's conclusion, based on circumstantial evidence and reasonable inferences drawn therefrom, that Butler's actions, considered collectively, demonstrated that he aided and abetted an attempted murder with intent to kill. Accordingly, we affirm.

## BACKGROUND

I. *Factual Background*

Ryan Lindsey owned private ATMs.[2] On the afternoon of March 7, 2016, Lindsey was replenishing cash in an ATM located in a marijuana dispensary. Lindsey carried an over-the-shoulder bag containing $24,000 in $20 bills. Anthony Twyman, Gerron

---

[1]    Further statutory references are to the Penal Code.

[2]    Our factual recitation is drawn from testimony by Lindsey and Los Angeles Police Department Detective Kristin Humphris, the investigating officer in this case, and other evidence admitted at the preliminary hearing, including video surveillance footage from inside and from a store across the street from the dispensary where the robbery and shooting took place.

McGary and Butler were together in the dispensary, and saw Lindsey load $4,000 into the ATM. Following a friendly interaction with Butler and Twyman, McGary left the dispensary and got into the front passenger seat of Butler's silver Audi, parked nearby. Butler and Twyman remained behind and monitored Lindsey's actions.

Shortly thereafter, Butler and Twyman also left the dispensary. Butler got into the driver's seat of his car, Twyman sat in the rear. Butler drove and parked his car across the street from and facing the dispensary. The three men waited for Lindsey to emerge. As Lindsey walked toward his truck, Butler made an abrupt U-turn across all traffic lanes and drove towards Lindsey. With tires screeching, Butler pulled his car up fast directly in front of Lindsey, positioning the car to block Lindsey from entering the driver's side of his truck.

As the Audi stopped in front of Lindsey, McGary rushed out of the front passenger seat, "and immediately he went for his gun, which was in his right side . . . in his pants." McGary moved quickly toward Lindsey, pointing a small pistol at him, and demanded the bag of money. Lindsey froze and held on to the bag's strap. McGary said nothing more and fired at Lindsey striking him in the thumb and chest and causing him to fall to the ground bleeding.

While Lindsey was down, McGary grabbed the bag, used the gun to strike Lindsey in the head and headed quickly back into Butler's car, which lurched forward. As he did so, McGary accidentally dropped the pistol. After realizing he had dropped the gun, McGary got out of the car, leaving the passenger door open, and returned to retrieve the pistol. By this time, Lindsey

3

had gotten up and looked into the car, saw the driver (Butler),[3] and heard him tell McGary, "Let's go. Let's go. Get in the car." McGary got back into the car and Butler drove off. Lindsey called 911 and gave the dispatcher the Audi's license plate number before being taken to the hospital to be treated for gunshot wounds to his thumb and chest and a broken collarbone.

McGary's phone was recovered from the scene. Several hours after the crimes, a photograph posted on Butler's Instagram account depicted Butler and McGary holding a large amount of cash in $20 denominations. That photo was "liked" by Twyman's Instagram account with the comment, "Gang Shit" and emojis of hand signals and a firearm. The phone also depicted a photo of McGary taken the day before the robbery holding a semiautomatic handgun. A couple of weeks after the crimes, Butler was apprehended after he fled a traffic stop. During a jailhouse conversation with an informant, Butler acknowledged having lied to detectives when he denied involvement in the Lindsey robbery.[4] Butler identified himself as a member of the

---

[3]     Lindsey initially misidentified Butler as the shooter.

[4]     The detective testified this conversation was part of a *Perkins* operation involving Butler. (See *Illinois v. Perkins* (1990) 496 U.S. 292, 294 (*Perkins*) [an undercover operative, placed in a cell with the suspect and whom the suspect does not know is a police agent, need not give *Miranda* warnings before questioning or interacting with the suspect].)

BSV (Blood Stone Villains) gang[5], admitted having been at the crime scene, admitted being the driver, admitted having lied to the police, and admitted the gun was gone. In a *Perkins* operation involving Twyman, Twyman said he was not the shooter, but was inside the dispensary when Lindsey serviced the ATM, and then got into the Audi with Butler and McGary to carry out the robbery.

## II. *Procedural Background*

An information filed in 2017 charged Butler and co-defendants, including Twyman and McGary, with one count of attempted premeditated murder (§§ 664, 187, subd. (a)), one count of ATM robbery (§ 211), five counts of second-degree robbery (§ 211), and three counts of kidnapping (§ 209, subd. (b)(1).) The information also alleged gang and firearm enhancements (§§ 186.22, subd. (b), 12022.53, subds. (b)-(e).) Butler pled no contest to premeditated attempted murder, admitted the gang and firearm enhancements and was sentenced to 25 years to life in prison.

## III. *The Section 1172.6 Petition for Resentencing*

In January 2022, Butler filed a petition seeking resentencing under section 1172.6. He checked boxes alleging that an information filed against him allowed the prosecution to convict him of attempted murder under a natural and probable

---

[5]     Butler, Twyman and McGary were all members of the BSV street gang. Although two gang experts opined that the robbery and attempted murder were committed for the benefit of the gang, the trial court stated it did not consider "the gang evidence . . . or any other peripheral evidence." in making its determination as to Butler's petition.

consequences theory, and that he could not presently be convicted of attempted murder due to changes to sections 188 or 189. The trial court found Butler established a prima facie case for relief, appointed counsel for him, and set the matter for an evidentiary hearing.

The evidentiary hearing was conducted in December 2022. The People did not call live witnesses and instead submitted the transcript of the preliminary hearing as their evidence. The prosecutor stated that "Butler was the driver. . . . [¶] Mr. McGary was the shooter. [¶] Mr. Twyman was the passenger in the vehicle. . . . I don't think the defense will contend that Mr. Butler did not intend to participate in the robbery based upon his conduct in this case. . . . [¶]. . . [¶] . . . The court's sole determination [would] be whether or not Mr. Butler possessed the intent to kill." The prosecutor argued that based "upon the totality of the evidence . . . the video, the *Perkins* [operation], Mr. Butler's statement . . . and the social media—it becomes clear . . . that Mr. Butler did intend for Mr. McGary to shoot the victim and attempt to kill him to effect the robbery."

Defense counsel observed that Butler was "the getaway driver," and asked the trial court to consider the factors in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) to determine whether Butler shared the intent of the actual shooter. Butler's counsel observed that no direct evidence had been presented at the preliminary hearing that Butler knew McGary was armed, nor had any evidence been presented that the robbers discussed shooting Lindsey to get the money. Counsel asserted it was pure speculation to assume that, because the men were together in the car, they must have discussed shooting Lindsey, and speculation was insufficient to satisfy the prosecution's burden to prove

6

beyond a reasonable doubt that Butler knew McGary would pull out a firearm and shoot the victim.  Counsel argued Butler's purpose in using his car to block Lindsey had been to effect the target offense of robbery, not to shoot anyone.

Implicitly acknowledging the case was close, the trial court observed that had they been "talking about major participants, certainly, if there [had been] a murder . . . this would be a very different situation" and, under the *Banks* factors it "would [not] have much of a decision to make."  The court thoroughly summarized the evidence from the preliminary hearing before finding, beyond a reasonable doubt, that Butler intended to kill the victim.  Specifically, the court stated,

> "First of all, Mr. Lindsey who is the victim in this case had gone into the dispensary . . . to refill . . . a private ATM. . . .

> "He . . . opened [his bag], took the money out and replaced it and closed the case. . . . Mr. Twyman, Mr. Butler, and Mr. McGary—are inside of the location at the time that [Lindsey] starts to refill that.  On the video observed [*sic*] they are viewing this and start to speak.  They walk out before Mr. Lindsey leaves. . . .

> "Then . . . Mr. Butler, who was the driver of the vehicle, reaches into the vehicle to grab something.  Mr. McGary gets in.  Mr. Twyman . . . is in the backseat [and] they move from the location that they are parked in to a location across the street . . . to position themselves when Mr. Lindsey is walking to his car . . . .

> "[¶] . . . [¶]

> "It is at that point in time that Mr. Butler, who was the driver of the vehicle, pulls up . . . at an angle . . . and

7

cuts in front of Mr. Lindsey, stops him, and at that moment immediately the shooter in this case jumps out of the vehicle and starts to approach. What is interesting to me is . . . what is not said. . . . I know that we do not know what was said during the discussion. I think it is very clear there was a discussion that at least one, if not all three of them, saw the money that was in this case that was closed in some fashion . . . . It is not like they decided on the spur of the moment to rob somebody who was on the street.

"They also are inside of that dispensary . . . . They do nothing to try and cover up their identities. They don't do anything. They go outside and simply wait for [Lindsey]. I don't think there could be any doubt, reasonable or not, that there is a conspiracy at that point in time, at the very least, to rob him.

"When the shooter gets out of the vehicle, the first thing he says is, 'Give me the money. Give me the bag,' which . . . is circumstantial evidence that there was a discussion specifically about what was going to occur outside, while they were actually inside of the location. And he immediately shoots the victim and then pistol-whips him. In the victim's words, he 'grabs onto the strap and won't let go of the bag,' having been shot through the hand and into the chest.

"The testimony at that point is that the shooter takes the bag but drops the gun that he has just used. Mr. Butler, at this point in time, is still waiting at that location. [H]e is sitting right there. He is within feet, three feet, twenty feet. I don't know, but he is right there, close

enough to where the victim stated that he was eye to eye with him, [and] looked directly into his eyes.

"The weapon is dropped while the shooter is attempting to go back and get into the vehicle.  Mr. Butler doesn't take off . . . .  He remains at that location.  It is not clear to me how much time this takes, but it seems like it is just seconds.  But . . . while [Butler] waits, the shooter goes back and actually retrieves that weapon.  Mr. Lindsey said they are looking right at each other, the shooter and [the] victim are looking right at each other at that point in time. . . . [A]nd then what occurs at that point in time, [Lindsey] said he has a view of the driver telling the shooter, 'Like, Let's go.  Let's go.  Get in the car.'

"[¶] . . . [¶]

"And it is at that point in time they drive off. . . .

"[V]ery soon thereafter, right after the robbery occurred . . . it was that day that he posts a picture of himself with the cash.  Mr. [McGary] . . . one of the two is also in that photograph.

"[¶] . . . [¶]

"[A}nd they are smiling and showing off that money. . . . [T]hat was within a couple of hours or several hours, but it was the same date as that incident.  Mr. Twyman is the one who . . . likes it . . . a smiling face emoji, gun emoji . . . .

"I do think that the inference is that not only did Mr. Butler—if this were a major participant to the crime, it would be very clear he was a major participant.  It doesn't apply here.  The question is whether or not he shares the intent.

"We have three individuals that are going to commit this robbery:  Mr. Twyman, Mr. McGary, and Mr. Butler.

"First of all . . . *there is no doubt* in this court's mind that *Mr. Butler was aware that Mr. McGary had that firearm*, and that is clear from the evidence that has been produced through the preliminary hearing testimony. . . . Mr. Twyman stayed in the rear of that vehicle.  I don't believe he did anything at all.  I'm not aware of him saying anything, doing anything.  He is just there.  Mr. Butler is taking the actions I have spoken about.  But no one else gets out of that vehicle to try and assist in taking that bag.  They are all there, clear as day.

"Not only that, the testimony is that as soon as Mr. McGary is getting out of that vehicle, he is pointing that gun.  He is speaking as he walks to Mr. Lindsey.  I don't know how far a distance that is, but it is very close from where Mr. Lindsey talks about being close to the vehicle and he fires immediately.  Mr. Butler doesn't take off. . . . Mr. Butler stays at that location while Mr. McGary pistol-whips Mr. Lindsey. . . . He remains at that location as Mr. McGary puts the money into the vehicle and starts getting in that vehicle and then . . . waits for the shooter to go back and get that gun.

"So in looking at the *Banks* factors . . . the question here is whether or not this is a shared intent. . . . And here it is obvious that Mr. Butler shares the intent of the robbery.  I don't think there is any question at all about that.  And I think, though, that here it is clear that Mr. Butler . . . shares the intent to kill this victim.  They want that money.  They have seen that money inside.  It is very

10

clear that it does not matter how this goes down. I think that Mr. Butler, by his actions during the incident, *the only reasonable inference is that beyond a reasonable doubt that he shared the intent to kill* in this matter.

"*Banks* . . . applies five nonexclusive factors for evaluating the extent of a defendant's participation, being present at the scene. Whether or not they do anything to either stop or whether they do anything to help facilitate the incident, in this case, an attempted murder.

"It is clear by Mr. Butler's actions that he has done nothing to prevent it and is doing everything to facilitate it, not because of any actions to save Mr. Lindsey, but by his actions to assist Mr. McGary as the actual shooter . . . . Here, by driving directly up to Mr. Lindsey . . . the only inference [is] that he knows Mr. McGary has that weapon and is going to take care of business. No one gets out to assist, even when the incident is starting to go awry in that he pistol-whips [Lindsey]. He has already shot [Lindsay] once in the chest. I think that *it is clear that if there was any sort of intent other than to actually kill the victim in this case, Mr. Butler would have taken different actions.*

"I think Mr. Twyman is in a much different circumstance, him being in the backseat of the car. There is not anything for me to speak about as far as any statements or such. . . .

"But *this court believes beyond a reasonable doubt,* not beyond any doubt, but beyond a reasonable doubt, *that Mr. Butler shared that intent* and as such . . . the conviction will stand." (Italics added.)

Later, the court added,

"This court had failed to mention that Mr. Butler was part of a *Perkin's* [*sic*] operation. . . . *[T]his was part of the circumstantial evidence* that helped the court make a decision that it did find beyond a reasonable doubt *that the defendant did harbor intent to kill*. But during that *Perkins* operation, not only did the defendant state that he had lied to law enforcement officers previously, but he also did admit to committing the robbery, didn't make any statements about the shooting, didn't deny that, didn't discount that at all, and it was also shown circumstantially he did have the intent to kill. That was part of the plan." (Italics added.)

## DISCUSSION

Butler contends there is insufficient evidence to support the court's denial of his resentencing petition based on its conclusion that he was an aider and abettor and acted with intent to kill. We reject this assertion. Substantial evidence supports the trial court's finding that Butler was convicted under a theory that remains valid under current law, i.e., direct aiding and abetting. (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [petitioner convicted of murder as an aider and abettor was ineligible for relief as a matter of law as Senate Bill No. 1437 did "not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought."].)

1. *Controlling Legal Principles and the Standard of Review*

Effective January 1, 2019, Senate Bill No. 1437 (2021–2022 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule

12

and the natural probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.) It accomplished this by amending sections 188 and 189. (Stats. 2018, ch. 1015, §§ 2, 3)

Senate Bill 1437 also created former section 1170.95 (now codified as section 1172.6), which established a procedure for defendants convicted of murder under prior law to seek resentencing in the trial court if they believe they could not be convicted of that crime after the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) Senate Bill No. 775 (2021–2022 Reg. Sess.) extended that protection to permit individuals convicted of attempted murder or manslaughter to petition for sentencing relief on the basis that they "could not presently be convicted of . . . attempted murder because of changes to Section[s] 188 or 189 made effective" by Senate Bill 1437. (§ 1172.6, subd. (a)(3).)

If a petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause why relief should not be granted. (§ 1172.6, subd. (c).) Absent a prosecutorial concession that relief is in order, the parties then participate in an evidentiary hearing in which the prosecution has the burden to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under sections 188 or 189 as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) At the evidentiary hearing, the parties may offer new or additional evidence, and the trial court may consider

evidence admitted at the trial of conviction, so long as it is admissible under current law. (*Ibid*.) The court sits as an independent factfinder to determine beyond a reasonable doubt whether the defendant is guilty under a valid theory. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

We review the denial of a section 1172.6 petition for substantial evidence. We examine the record in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably have deduced from the evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988; *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) Substantial evidence includes circumstantial evidence and reasonable inferences drawn from that evidence. (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.)

2.  *Continued Validity of Theory of Attempted Murder as Direct Aider and Abettor Acting with Intent to Kill*

"Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) "To be guilty of a crime as an aider and abettor, a person must 'aid[ ] the [direct] perpetrator by acts or encourage[ ] him [or her] by words or gestures.' [Citations.] In addition, . . . the person must give such aid or encouragement 'with knowledge of the criminal purpose of the [direct] perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of,' the crime in question. [Citations.] When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the specific intent of the [direct] perpetrator,' that is to say, the person must 'know[ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or

14

encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' " (*People v. Lee* (2003) 31 Cal.4th 613, 623–624, italics omitted, superseded by statute on other grounds by *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 824; see § 31 [A defendant may be convicted as the direct perpetrator or as an aider and abettor].)

"Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and circumstances surrounding the crime." (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.) The test is "whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134.) "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208; *People v. Smith* (1998) 64 Cal.App.4th 1458, 1469 [intent is generally proved by the act and surrounding circumstances].)

3. *The Record Supports the Trial Court's Finding that Butler was a Direct Aider and Abettor Who Acted with Intent to Kill.*

Butler maintains that the trial court's conclusion that he was a direct aider and abettor who encouraged and facilitated McGary in planning and executing an armed robbery and shared the shooter's intent to kill is not supported by substantial evidence, but rather amounts to a speculative house of cards.

15

Addressing each action on its own, Butler asserts that observing Lindsey reload the ATM from his bag of money, waiting with his cohorts in his car for Lindsey to emerge, driving his car to block Lindsey from entering his vehicle, while simultaneously placing McGary in position to rob and shoot Lindsey, then waiting while McGary retrieved the gun, driving off (instead of stopping to help the shooting victim), and later celebrating the robbery with McGary by displaying large amounts of cash in an Instagram post does not amount to substantial evidence or evidence from which a reasonable inference may be drawn that he shared McGary's intent to kill Lindsey during the robbery. To accept Butler's assertions would be akin to evaluating the integrity of a rope by separating its individual strands to test each for its tensile strength. This we will not do. Reviewing the evidence collectively in accordance with a standard which requires deference for the factfinder's reasonable inferences and conclusions–even if we might have drawn a different reasonable inference–the record includes sufficient evidence to support the conclusion that Butler encouraged and facilitated McGary in the shooting and shared an intent to kill the victim as they executed the armed robbery.

Considered in its totality, the evidence shows the crimes were carefully planned and executed as Butler and his accomplices, having seen Lindsey with a bag containing a substantial amount of money, waited to rob him when he emerged from the dispensary. Butler's role was to use his vehicle to block Lindsey, thereby placing McGary in position to confront, rob and shoot Lindsey. The trial court's conclusion that Butler shared McGary's intent is buttressed by evidence that Butler did not express surprise or shock at the shooting, and neither drove

16

away without McGary nor attempted to assist Lindsey. Instead, Butler waited with the engine running and the passenger door open while the shooter went back to retrieve the weapon, enabled him safely to escape the crime scene, and later celebrated the crimes with the shooter in a social media post. On this evidence the trial court could reasonably infer that Butler encouraged and facilitated McGary to commit the shooting and shared his intent to kill the victim as they carried out the robbery.

Butler contends there was no evidence that he knew McGary had a firearm and planned to shoot Lindsey during the robbery. The trial court may draw reasonable inferences based on the circumstances surrounding the crimes. (*People v. Myles* (2023) 89 Cal.App.5th 711, 739 [Circumstantial evidence is as sufficient as direct evidence to support a conviction].) As discussed above, the evidentiary record, considered as a whole, is sufficient to support the court's conclusion that Butler shared the shooter's intent to kill. By blocking Lindsey and placing McGary in a prime position to exit the car and rapidly fire at Lindsey, waiting for McGary to retrieve the dropped firearm, and then celebrating the robbery in a photo taken with the shooter a few hours later displaying the stolen cash, it was reasonable for the court to infer Butler was aware the robbery would succeed by shooting Lindsey and fleeing with the bag of cash. Butler's conduct before, during, and after the shooting, gives rise to a reasonable inference that he was aware McGary had a gun that he planned to use to rob Lindsey. We agree with Butler that the court might have drawn "[a]nother reasonable inference" from the one it did. But an appellant cannot make an argument for insufficiency of the evidence by positing the inference he wished the factfinder had drawn. (See *People v. Earp* (1999) 20 Cal.4th

17

826, 887–888 [that circumstances might reasonably support a contrary finding does not render the evidence insubstantial]; *People v. Stanley* (1995) 10 Cal.4th 764, 792–793 [reviewing court may not reweigh evidence or determine if other inferences could have been drawn from the evidence]; *People v. Perez* (1992) 2 Cal.4th 1117, 1124 [the possibility the evidence may be reconciled with a contrary conclusion does not warrant reversal of judgment].) Butler's assertion that the record lacks direct evidence of his intent cannot defeat the reasonable inference drawn by the trial court that he shared the intent to kill based on circumstantial evidence. (*People v. Mendoza* (2000) 24 Cal.4th 130, 162 ["Direct evidence is neither inherently stronger nor inherently weaker than circumstantial evidence"].)

Nor does Butler's reliance on *Banks* advance his cause. Unlike the felony murder committed by a defendant in *Banks*, Butler was convicted of attempted murder. The facts here differ markedly from those in *Banks* in which the defendant was the getaway driver who waited blocks away while his accomplices fatally shot a security guard in the course of a dispensary robbery. (*Banks, supra,* 61 Cal.4th at pp. 805–806.) In *Banks*, the court correctly observed that there was "no evidence [the driver who was a block away] saw or heard the shooting, that he could have seen or heard the shooting, or that he had any immediate role in instigating it or could have prevented it." (*Id*. at p. 805.) In contrast, Butler's conduct before, during and after the sequence of criminal events was significant. He actively participated in planning and facilitating the robbery, purposefully driving his car to stop Lindsey's escape while positioning McGary directly in the victim's path. Butler also assisted the shooter immediately after the shooting by waiting

18

with his car engine running while McGary went back for the weapon before returning to the waiting vehicle, then rapidly driving away. In contrast to the minor role of the defendant in *Banks* in facilitating the crimes, Butler was closely involved in the commission of a violent robbery and attempted murder. (*In re Scoggins* (2020) 9 Cal.5th 667, 682 ["We have said that any person who plans or participates in an *armed* robbery can be said to anticipate that lethal violence might be used."].)

In conclusion, substantial evidence supports the trial court's finding that Butler directly aided and abetted the attempted murder with intent to kill and, as such, was ineligible for resentencing.[6]

---

[6] Butler has requested that we take judicial notice of the trial court's June 16, 2023, order by which he argues the court effectively granted Twyman's section 1172.6 petition by granting the prosecution's motion to amend the information to charge robbery–to which Twyman pled no contest–and dismissed Twyman's conviction for attempted murder. Butler contends that the trial court's decision with regard to Twyman's resentencing petition undercuts its denial of his petition. Not so. The court's decision with respect to Twyman's petition is not relevant to our review for substantial evidence here. While Twyman was involved in planning the robbery, unlike Butler, he did nothing to facilitate the shooter's placement and escape afterwards. (See *People v. Palmer* (2001) 24 Cal.4th 856, 858 [Where substantial evidence supports a verdict as to one defendant, that verdict may stand notwithstanding an apparently inconsistent verdict as to another defendant].) Accordingly, we deny the request for judicial notice.

## DISPOSITION

The post-judgment order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.