Filed 8/29/24  P. v. Zarazu CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B329630 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. VA093907-01 |
| HENRY ZARAZU, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

—————————

## BACKGROUND

On July 6, 2009, a jury found appellant Henry Zarazu guilty of the first degree murder of Francisco Herrera, the attempted murders of Carlos Nunez and Richard Murillo, and shooting from an occupied motor vehicle. (Pen. Code,[1] §§ 187, subd. (a), 664, 246.) The jury also found true that the murder was perpetrated by means of discharging a firearm from a motor vehicle with the intent of inflicting death. (§ 190.2, subd. (a)(21).) As to all the counts the jury found true principal firearm enhancements under section 12022.53, subdivisions (b) through (e) and gang enhancements under section 186.22, subdivision (b). On November 23, 2009, the trial court sentenced Zarazu to life in prison without the possibility of parole on the murder conviction plus 105 years on the other counts of conviction.

On April 18, 2022, Zarazu filed a petition for resentencing under section 1172.6. The trial court appointed counsel, ordered briefing, and held a hearing to determine appellant's prima facie eligibility for relief. The trial court denied the petition, finding Zarazu had not made a prima facie case for relief because he was convicted of murder and attempted murder as a direct aider and abettor with the intent to kill. The trial court stated: "Specifically, the court has determined that no jury instructions of felony murder or natural and probable consequences were—on the natural and probable consequences theory were given for count 1, the first degree murder charge regarding Francisco Herrera. [¶] The court also notes that no natural and probable consequence jury instructions were given to the attempted murder charges in counts 2 and 3. [¶] So I'm going to go a little

---

[1]     Statutory references are to the Penal Code.

2

bit longer. [¶] But what the court found is that the defendant is statutorily ineligible because he had not been prosecuted on either a natural and probable consequence theory or under a felony murder theory. Therefore, he is ineligible for relief under Penal Code section 1172.6 as a matter of law. [¶] I also want to indicate that . . . the jury was instructed on a murder malice theory as well as the special circumstance that the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death. The jury's finding of the special circumstance supports that the defendant was convicted of aiding and abetting someone who intentionally shot from a vehicle with the intent to inflict death. [¶] Both theories of murder given to the jury in this case fall outside [section] 1172.6. [¶] The court also finds that this is not a case where malice was imputed to the defendant. [¶] Based on that, the court is going to be dismissing the petition at the prima facie stage because the petitioner has not met his burden to show he is entitled to relief under Penal Code section 1172.6, despite the fact that the burden is very small. Nevertheless, even though the burden is very, very, it's a very small burden, it just simply has not been met. [¶] And I just want to point out just a few other things. [¶] An aider and abettor who acts with implied malice can be guilty of murder entirely apart from the natural and probable consequence doctrine. This is simply not a case under which malice is imputed to a person based solely on a person's participation in the crime. [¶] The aiding and abetting instructions given in this case require that the jury found defendant Zarazu was a direct aider and abettor; that is, that he knew the perpetrator intended to commit the crime of murder and that he intended to aid and

3

abet the perpetrator in committing that crime. [¶] And, finally, this is what a natural and probable consequence theory is which does not exist in this case: Under the natural and probable consequence theory of aiding and abetting a murder, a defendant can be found guilty of murder if he or she aids and abets a crime (target crime)—and that in this case would be murder—and murder (the non-target crime) is a natural and probable consequence of that target crime. [¶] This did not happen in this case. We have no jury instructions on the target crime. We have no jury instructions on a non-target crime. We have no closing arguments that support this theory. [¶] Finally, getting to the final thing, and that is the theory of attempted murder, because I felt the defense counsel seemed to suggest to me that no matter what, I would have to grant it on attempted murder, and the court disagrees. [¶] The only theory of attempted murder that is covered by section 1172.6 is attempted murder under the natural and probable consequence doctrine. [¶] The jury instructions referenced by defense [counsel] in support of his claim that I should not dismiss the petition have nothing to do with the natural and probable consequence doctrine. The instruction given did not permit the jury to impute malice to the defendant or apply the natural and probable consequence doctrine. [¶] For all of those reasons, I am dismissing the petition."

This appeal followed.

The facts presented at trial were not complex and, for context only, we recite them from our opinion affirming Zarazu's judgment of conviction. (*People v. Zarazu* (May 23, 2012, B220661) [nonpub. opn.].) Zarazu was driving his Mustang with co-defendant Ernesto Perez in the front seat and co-defendant Martin Sanchez in the backseat. As Zarazu was driving his

4

passengers around, another car driven by Carlos Nunez with passengers Ricardo Murrillo, Mercedes Pantoja, and Francisco Herrera was out and about. Zarazu pulled his Mustang up next to Nunez's car. Its passenger side was about three feet from Nunez's driver's side. Zarazu leaned forward with both hands on the steering wheel and looked at Nunez, whom he knew. Nunez saw a gun pointed at him from the front passenger window of Zarazu's car. Nunez could not see who was holding the gun. But he immediately put his car into reverse and rapidly drove backward. He heard gunshots as he backed away. Nunez drove halfway down the block in reverse and crashed into tree. He heard a second round of gunshots after he crashed his car. (*Ibid.*)

The police arrived within minutes of the gunshots. They saw driver Nunez standing next to the curb, passenger Murillo walking toward the street from the driveway of a nearby house, and passenger Herrera shot and bleeding in the backseat of the car. Herrera, who was 12 years old, died from a gunshot wound to the chest. Nunez later identified Zarazu as the driver of the Mustang. (*People v. Zarazu, supra*, B220661.)

The individuals in the two cars were members of rival gangs.

Zarazu and his front seat passenger Perez were tried jointly, Perez as the alleged shooter and Zarazu as the alleged driver. The trial court did not instruct the jury on the natural and probable consequences doctrine or the felony murder rule or any other theory of imputed liability. Indeed, as relevant to Zarazu, it instructed the jury with CALJIC Nos. 3.00 and 3.01 on direct aiding and abetting liability for the murder and attempted murder counts.

5

## DISCUSSION

A. *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Hola* (2022) 77 Cal.App.5th 362, 370–371.) It accomplished this by amending sections 188 and 189. (Stats. 2018, ch. 1015, § 2, 3; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill No. 1437 also created former section 1170.95 (now codified as section 1172.6), which established a procedure by which defendants convicted of murder under prior law may seek resentencing in the trial court if they believe they could not be convicted of that crime after the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) Senate Bill No. 775 (2020–2021 Reg. Sess.) extended that sentencing relief to individuals convicted of attempted murder and manslaughter. (§ 1172.6, subd. (a)(3).)

Petitions under section 1172.6 address convictions where a defendant was not the shooter but was held vicariously liable on one of several theories of liability identified in the statute. If the record establishes ineligibility for resentencing as a matter of law, the petition is properly denied. (*Lewis, supra*, 11 Cal.5th at pp. 970–972.) However, the petition and record must establish conclusively that the defendant is ineligible for relief. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [a "petitioner is ineligible for

6

resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner was the actual killer."].) (*Ibid.*) When a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (*Ibid.*)

After appointment of counsel, the trial court assesses when a prima facie case for relief has been made. The prima facie inquiry is limited. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In assessing whether a defendant has made a prima facie case for relief pursuant to section 1172.6 ruling on a resentencing petition, the trial court is entitled to review the record of conviction, which includes the jury summations, jury instructions, verdict forms, and prior appellate opinions. (*Lewis*, at pp. 971–972.) However, *Lewis* cautions that although appellate opinions are generally considered to be part of the record of conviction, the prima facie bar was intentionally set very low and the probative value of an appellate opinion is case-specific; a trial court should not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

To carry his burden, Zarazu had to allege facts which, if true, demonstrated that he could not presently be convicted of attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) Zarazu has not done that and therefore we must affirm the denial of his petition for resentencing.

Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); *People v.*

*Estrada* (2022) 77 Cal.App.5th 941, 945 (*Estrada*) [petitioner convicted of murder as an aider and abettor ineligible for relief as a matter of law as Senate Bill No. 1437 did " 'not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' "].)  "To be guilty of a crime as an aider and abettor, a person must 'aid[ ] the [direct] perpetrator by acts or encourage[ ] him [or her] by words or gestures.' [Citations.]  In addition, . . . the person must give such aid or encouragement 'with knowledge of the criminal purpose of the [direct] perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of,' the crime in question.  [Citations.]  When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the specific intent of the [direct] perpetrator,' that is to say, the person must 'know[ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' "
(*People v. Lee* (2003) 31 Cal.4th 613, 623–624, superseded by statute on other grounds by *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 824; see § 31 [A defendant may be convicted as the direct perpetrator or as an aider and abettor].)

"Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and circumstances surrounding the crime."  (*People v. Canizales* (2019) 7 Cal.5th 591, 602.)  " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' "
(*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  The test is

8

"whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134; *People v. Smith* (1998) 64 Cal.App.4th 1458, 1469 [intent is generally proved by the act and surrounding circumstances].)

Here the record reflects that the jury was not instructed on any theory of liability that allowed it to impute malice to Zarazu. Instead, the jury was instructed on the elements that must be found to establish direct aiding and abetting murder and attempted murder, including finding that Zarazu had the intent to kill. As set forth above, these elements remain the same after the amendments to sections 188 and 189.

In making its findings, the trial court did not engage in factfinding; it simply reviewed the jury instructions given at trial. Because there is no evidence in the record from which it can be inferred that the jury relied on an imputed malice theory now improper after the passage of Senate Bills Nos. 1437 and 775, the trial court did not err in finding Zarazu had failed to establish a prima facie case of eligibility for resentencing.

Appellant contends that "[s]everal jury instructions together with the prosecutor's misstatements of law during closing argument raised the possibility" that the jury convicted appellant on a theory of imputed malice. In this regard, he argues: 1) the jury was instructed that aiders and abettors are principals in crime and each principal, regardless of the extent or manner of participation is equally guilty; 2) the jury instructions failed to state that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime"; 3) the prosecutor misstated the law in the closing argument by stating the jury could convict Zarazu of first degree murder as an aider

9

and abettor if it found him to be a "major participant" who acted with "reckless indifference to human life"; 4) felony murder was not charged nor was the felony murder special circumstance alleged so there were no instructions on the definition of a major participant or reckless indifference to human life; this allowed the jury to find appellant guilty as an aider and abettor without a finding of a personal intent to kill or acts aiding a killing if it found appellant to be a major participant who acted with reckless indifference to human life; and 5) CALJIC No. 8.67 stating the "*would-be slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and make a direct but ineffectual act to kill another human" allowed the jury to convict appellant of attempted murder based on the mental state and acts of Perez. In sum, appellant argues these instructions and the prosecutor's argument created the possibility that appellant was convicted under a currently invalid theory of liability, which precluded a prima facie denial as a matter of law.

We reject these arguments. First, as to the two attempted murder counts, the only imputed theory of liability arises under the natural and probable consequences doctrine. (*Coley*, *supra*, 77 Cal.App.5th at p. 548; *People v. Offley* (2020) 48 Cal.App.5h 588, 599.) Here, the jury was not instructed on that doctrine. Instead, it was instructed that to find appellant guilty of attempted murder as an aider and abettor, the jury had to find that Zarazu, personally, harbored an intent to kill. This instruction cut off any theory of imputed liability because it required the jury to find that Zarazu himself had an intent to kill, separate and apart from the intent of the shooter.

The "would-be" slayer language of CALJIC No. 8.67 is immaterial. It was given not because it was relevant to attempted murder, but it was relevant to the extra elements for the allegations that the attempted murders were committed with willfulness, deliberation, and premeditation. CALJIC No. 8.67 goes to whether the "would-be" slayer took the time to think about the potentially fatal consequences of his actions and chose to go forward anyway. The instruction was irrelevant to the jury's decision to convict Zarazu of attempted murder. As such it introduced no ambiguity about imputed malice for attempted murder. And, if, for the sake of argument, it did interject some ambiguity, that objection should have been made at trial and on direct appeal of the conviction. The changes to sections 188 and 189 are not implicated by this instruction. A petition under 1176.2.6 is not the vehicle by which to resurrect claims not made in the trial court or on direct appeal, even though they may have been relevant at the time. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [the mere filing of a section 1172.6 petition does not afford a new opportunity to raise claims of trial error].)

Next, the trial court instructed with CALJIC No. 3.00 that aiders and abettors are principals to a crime and each is equally guilty. That instruction did not permit the jury to convict based upon imputed malice. It simply told the jurors that whether the individual was the shooter or the person who aided and abetted the shooter, their guilt was equally significant if they each satisfied the elements of the crime as particularized by the court's instructions. (*People v. Johnson* (2016) 62 Cal.4th 600, 638–641 [where jury is instructed with the requirements of aider and abettor liability, there is no reasonable likelihood the jurors

11

would have understood the equally guilty language to allow them to base defendant's liability for murder on the mental state of the actual shooter rather than on defendant's own mental state in aiding and abetting the killing]; *Estrada, supra,* 77 Cal.App.5th at p. 947 [same].) This principle has not been changed by the alterations made to sections 188 and 189. (*People v. Burns* (2023) 95 Cal.App.5th 862, 865 [challenge to "equally guilty" language should have been made on direct appeal as it was based on law existing before the changes to sections 188 and 189].) Similarly, that the trial court failed to point out that malice shall not be imputed based solely on a person's participation in a crime, as set out in section 188, is immaterial. The trial court gave correct instructions on what the jury needed to find to sustain a conviction. It did not have to list and then disclaim every possible incorrect theory of liability in order to correctly instruct the jury.

Appellant's complaint about the court instructing on being a major participant who acted with reckless indifference to human life is disingenuous. That instruction was given as part of the special circumstance finding. By its own terms, it did not become relevant unless and until the jury had considered and decided the issue of guilt on the underlying charges. To contend that the jury possibly imputed malice on the underlying substantive offenses is a far and impossible reach. If the instruction was indeed given in error, as appellant contends, because no special circumstance was charged, then it was irrelevant and should have been challenged on direct appeal. What Zarazu is really arguing is that the instructions may have misled the jury as to what was *then* required to convict him. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935

12

[instructional errors have nothing to do with 2019 legislative changes because they could have been raised and argued at the time of the direct appeal].)

## DISPOSITION

The order denying the petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.