Filed 9/20/24  P. v. Montes CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE LUIS MONTES,<br><br>    Defendant and Appellant. | B332028<br><br>(Los Angeles County<br>Super. Ct. No. NA069209-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Thomas I. Graham for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## PROCEDURAL BACKGROUND

On April 17, 2008, a jury found appellant Jorge Luis Montes guilty of two counts of attempted murder in violation of Penal Code[1] sections 187, subdivision (a) and 664 and one count of mayhem in violation of section 203. The jury also found true that 1) the attempted murders were committed willfully, deliberately, and with premeditation; 2) the offenses were committed for the benefit of a criminal street gang within the meaning of section 186.22(b)(1)(C); 3) a principal was armed with a firearm during the commission of the offense within the meaning of section 12022.53, subdivisions (b), (c), (d) and (e)(1); and 4) a principal discharged a firearm proximately causing great bodily injury to the victims within the meaning of section 12022.53, subdivisions (d) and (e)(1). On May 16, 2008, the trial court sentenced Montes to two consecutive life terms in prison with the possibility of parole for the attempted murder convictions, plus a 25-year-to-life term for the firearm enhancement. On appeal, we affirmed the convictions. (*People v. Montes* (Dec. 18, 2009, B208021) [nonpub. opn.].)

On February 25, 2021, Montes filed a petition for resentencing under section 1170.95 (now section 1172.6). The trial court summarily denied the petition on several grounds which Montes appealed. We reversed and remanded with directions to the trial court to order the parties to brief the issues and then to determine whether Montes had established a prima facie basis for resentencing relief and, if so, to proceed with an evidentiary hearing. (*People v. Montes* (2021) 71 Cal.App.5th 1001.)

---

[1]    Undesignated statutory references are to the Penal Code.

On remand the People submitted on whether petitioner had made out a prima facie case for relief. The trial court agreed to set an evidentiary hearing as required by section 1172.6, subdivision (d). The parties stipulated that no witnesses would be called at the evidentiary hearing and the trial court would determine whether Montes was entitled to be resentenced based on the record of conviction and argument of the parties. On February 22, 2023, the parties argued the matter before the trial court.

On May 30, 2023, the trial court issued a written order denying the petition. The court found "beyond a reasonable doubt that petitioner was a principal and direct aider and abettor who possessed the specific intent to kill, and is guilty of attempted murder under a still viable theory of homicide." This appeal followed.

## STATEMENT OF FACTS

The pertinent facts presented at the evidentiary hearing were not complex.[2] On January 29, 2006, Montes was driving a car with co-defendants Saul Diaz (Kuete) and "Coco" as passengers. Kuete and Coco were looking for rival gang members or information about rival gang members who had severely beaten up a member of their gang the day before. When Kuete spotted victims Randy Green and Russell Thompson walking on the sidewalk, he ordered Montes to pull over near them. After asking "Where you from?" Kuete and Coco got out of the car and

---

[2] We grant Montes's request that we take judicial notice of the record on appeal from the original judgment. At the evidentiary hearing the trial court considered the transcripts of the trial.

began chasing Green and Thompson, who were running away. Green recognized Kuete as someone who had jumped him before, hitting him in the arm with a pipe. As they were running, Green heard something cock back as if it were a firearm and Thompson heard 12 gunshots. Kuete and Coco began shooting at the victims multiple times and then returned to the car. Montes drove them away. Green was hit in the arm and the buttocks area. Thompson was shot below the waist and as a result wears a colostomy bag.

During the shooting, Thompson saw Montes's car move from where it had initially stopped. It moved two houses down the road in the same direction as Kuete and Coco. After the shots were fired, someone yelled "Eastside Wilmas."

Montes was arrested approximately three weeks after the shooting. Montes told Detective Smith (the interviewer) that he would see Kuete with a gun all the time and that on the day of the shooting Kuete "must have had one." Montes said Kuete is "trigger happy" and always trying to make a name for himself.

Montes eventually admitted to being at the scene of the shooting. Montes stated Kuete wanted Montes to give him (Kuete) and Coco a ride to look for the guys who had jumped their fellow gang member the day before. Kuete and Coco told Montes he had to help them out because they were from the same hood. Montes drove Kuete and Coco to the area they had directed him to. Kuete told Montes to pull over because Kuete and Coco "had seen some black guy." Montes pulled over. Kuete and Coco got out of the car and began to run after the black guys and then to shoot at them. Montes panicked and tried to drive away, but Kuete and Coco yelled "come here," ran toward Montes's car, got

in and said, "what the fuck, you were going to leave us." Montes then drove them away and dropped them off at Kuete's house.

Montes saw two guns during the shooting. He testified he never would have taken Kuete and Coco in his car if he had known they were going to shoot someone. He felt that if he had refused to drive them, he would have been in danger from them.

Officer Mark Maldonado, a Los Angeles Police Department gang expert, testified that Montes is a member of the Eastside Wilmas criminal street gang. He based this on Montes's tattoos and having seen him associate with Eastside Wilmas gang members in that gang's territory. He testified that a "walk-up" is when someone drives shooters to a location and the shooters make the call "where you from?" They get out of the car, chase and shoot at the victims, get back in the car, and leave. The person asked to drive is typically a member of the same gang as the shooters. Maldonado testified he had not seen Montes participate in common Eastside Wilmas gang-related activities and found no gang-related paraphernalia, photos or weapons during a search of Montes's home.

## DISCUSSION

A.    *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*),

5

superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) Senate Bill No. 1437 accomplished this by amending sections 188 and 189. (Stats. 2018, ch. 1015, § 2, 3; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill No. 1437 also created former section 1170.95 (now codified as section 1172.6), which established a procedure by which defendants convicted of murder under prior law may seek resentencing in the trial court if they believe they could not be convicted of that crime after the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) Senate Bill No. 775 (2021–2022 Reg. Sess.) extended that sentencing relief to individuals convicted of attempted murder and manslaughter. (§ 1172.6, subd. (a)(3).)

Petitions under section 1172.6 address convictions where a defendant was not the shooter but was held vicariously liable on one of several theories of liability identified in the statute. If the record establishes ineligibility for resentencing as a matter of law, the petition is properly denied. (*Lewis*, *supra*, 11 Cal.5th at pp. 970–972.) However, the petition and record must establish conclusively that the defendant is ineligible for relief. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [a "petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner was the actual killer."].)

After appointment of counsel, the trial court assesses when a prima facie case for relief has been made. The prima facie inquiry is limited. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In assessing whether a defendant has made a prima facie case for

6

relief pursuant to section 1172.6 ruling on a resentencing petition, the trial court is entitled to review the record of conviction, which includes the jury summations, jury instructions, verdict forms, and prior appellate opinions.  (*Lewis*, at pp. 971–972.)  However, *Lewis* cautions that although appellate opinions are generally considered to be part of the record of conviction, the prima facie bar was intentionally set very low and the probative value of an appellate opinion is case-specific; a trial court should not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id*. at p. 972.)

If a petitioner makes a prima facie showing of entitlement to relief, the court issues an order to show cause and holds an evidentiary hearing to determine whether to vacate the conviction at issue, recall the sentence, and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)  At the hearing, the prosecution bears the burden to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by changes to section 188 or 189.  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Id*., subd. (d)(3).)  The prosecutor and petitioner may offer evidence previously admitted at any prior hearing or trial that is admissible under current law and may also offer new or additional evidence to meet their respective burdens.  (*Ibid*.)

At an evidentiary hearing under section 1172.6, subdivision (d)(3), "the superior court acts as an independent fact finder and determines whether the People have met their burden in proving

7

the defendant guilty" under the amendments to the Penal Code made by Senate Bill No. 1473. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1016.) A trial court's factual findings at a section 1172.6, subdivision (d)(3) hearing are reviewed for substantial evidence. Under this standard, the record is reviewed in the light most favorable to the judgment and a reviewing court decides whether the record discloses substantial evidence such that a reasonable trier of act could find the defendant guilty beyond a reasonable doubt. We look to whether the prosecution has introduced sufficient evidence of reasonable, credible, and solid value to support a finding beyond a reasonable doubt that petitioner is guilty. (*Henley,* at p. 1017.) We must affirm the superior court's order if supported by substantial evidence even if "there is also substantial evidence to support a contrary conclusion." (*People v. Riley* (2015) 240 Cal.App.4th 1152, 1165–1166.) Indeed, the reviewing court will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.)

Direct aiding and abetting remains a valid theory of liability because an accomplice must personally possess the culpable mental state, unlike an accomplice under the natural and probable consequences doctrine. (*Gentile*, *supra*, 10 Cal.5th at p. 848, superseded on other grounds by § 1172.6, subd. (g); *People v. Coley* (2022) 77 Cal.App.5th 539, 548; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [Senate Bill No. 1437 did "not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].) "To be guilty of a crime as an aider and abettor, a person must 'aid[ ] the [direct] perpetrator by acts or

encourage[ ] him [or her] by words or gestures.' [Citations.] In addition . . . the person must give such aid or encouragement 'with knowledge of the criminal purpose of the [direct] perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of,' the crime in question. [Citations.] When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the specific intent of the [direct] perpetrator,' that is to say, the person must 'know[ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' " (*People v. Lee* (2003) 31 Cal.4th 613, 623–624, superseded by statute on other grounds by *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 824; see § 31 [a defendant may be convicted as the direct perpetrator or as an aider and abettor].)

Aiding and abetting attempted murder requires a finding of express malice. Specifically, to establish that Montes is liable for aiding and abetting the attempted murders of Green and Thompson, the court must find that the perpetrators (here, Kuete and Coco) acted with express malice (i.e., intended to kill) and the aider and abettor (Montes) must have known the perpetrators' purpose and intended to facilitate it. Thus, both perpetrator and aider must act with express malice. (*People v. Lee, supra,* 31 Cal.4th at p. 624 ["to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill"].)

9

"Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.) The test is "whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134; *People v. Smith* (1998) 64 Cal.App.4th 1458, 1469 [intent is generally proved by the act and surrounding circumstances].)

Here the evidence showed that Montes was driving a car with two fellow gang members who were looking for rivals responsible for shooting one of their own the day before. Montes knew they were looking for rival gang members and agreed to drive. He also knew Kuete was always armed and he saw that both Kuete and Coco had guns as they chased the victims. He followed Kuete's instructions, stopped the car so they could interact with the two victims, saw them shoot at the victims, followed them slowly in his car as they ran after the victims, and drove them away from the scene of the shooting. Without a doubt Montes directly aided the shooters by driving them to and from the scene of the shootings. He had an opportunity to drive away after the shooting started, but he remained at the scene and drove the shooters away so they could make their escape.

As to intent, the evidence supported an inference that Montes, as a member of the gang and knowing Kuete was always armed, knew Kuete had an intent to kill as their purpose was to avenge the shooting of their fellow gang member the night before. Driving Kuete and Coco to the scene, helping them escape, and not stopping to assist the victims support the inference that Montes himself also had an intent to kill. As the trial court found: "[Appellant] retaliated for the near fatal assault on a fellow [East Side] Wilmas Gang Member 'Clown' Payaso the day before. The evidence further demonstrated that [appellant] knew that his fellow gang member shooter Kuete would be armed with a gun. [Appellant] admitted that Kuete called him to join in the pursuit of 'Clown's' assailants. [Appellant] chose to drive the armed Kuete and another gang member, 'Coco' into rival gang territory. [Appellant] chose to wait as Kuete and Coco exited the car with guns drawn, one shouting 'Eastside Wilmas,' before running toward the victims and opening fire. [Appellant] could have withdrawn by refusing to drive the shooters, or by notifying them that he was no longer participating. He never withdrew from intended murder." We agree.

Because substantial evidence supports a finding that Montes acted with express malice when he aided Kuete and Coco in the attempted murders of Green and Thompson, the court did not err in denying Montes's petition for resentencing under section 1172.6 as to the counts of conviction for attempted murder.

11

## DISPOSITION

The order denying the petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.